592 So.2d 29 (1991)
James E. GOWDY and John L. Gowdy
v.
STATE of Mississippi.
No. 89-KA-0463.
Supreme Court of Mississippi.
December 4, 1991.
*30 Rogers J. Druhet and Leslie C. Gates, Meridian, for appellants.
Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and McRAE, JJ.
ROBERTSON, Justice, for the Court:

I.
At its core, this sale-of-cocaine case concerns the Circuit Court's duty when, some two months prior to trial, it orders the prosecution "to make diligent efforts to obtain the address of the confidential informer" who set up the two sales, and where on the eve of trial, it becomes apparent the prosecution has done nothing and the informer is still missing, in the face of which the defense moves for a continuance. The Circuit Court displayed initial sensitivity to defendants' plight, but in the end, denied the motion. On today's facts, we hold this an abuse of discretion and reverse.

II.

A.
First, the cast of characters:
James E. Gowdy, age 34 at the time of trial, and John L. Gowdy, age 31, are brothers having additional siblings, all of whom reside in Lauderdale County, Mississippi. James E. Gowdy and John L. Gowdy were the Defendants below and are the Appellants here.
Tim Rutledge and Joey Mays are both undercover agents associated with the Mississippi Bureau of Narcotics (MBN). Agents Mays and Rutledge participated in the purchase of cocaine from James Gowdy, a sale brother John Gowdy is said to have aided and abetted.
In a way, W.W. (Willie) Roland (sometimes "C.I. Roland") is our character of consequence. Roland was the not-so-confidential informant who knew the Gowdys and who directly facilitated and witnessed the contact between Agent Rutledge and James Gowdy, which is said to have resulted in two sales.
Lt. Robert Earl Pierce was district supervisor for MBN's office in Meridian. Agent Glen Knight was an MBN officer also assigned to the Meridian office. Lt. Pierce and Agent Knight served in a surveillance capacity in connection with the purported *31 buy from the Gowdys. As will presently appear, they play a central (non)role in locating C.I. Roland.

B.
On the evening of July 25, 1987, Willie Roland led Agents Rutledge and Mays, dressed as sailors, to a take-out restaurant in Lauderdale, Mississippi.[1] Roland approached a man who identified himself as "Clyde" and sought to buy some crack cocaine. "Clyde" left, advising that he would return in thirty minutes. At approximately 7:30, "Clyde" returned with James Gowdy, whom Roland immediately asked about a possible purchase. After some discussion, James Gowdy told Roland, Rutledge and Mays to follow him to another location. James got in a 1985 blue Chevrolet automobile driven by his brother, John, and the two drove to the Rock Lounge, still in Lauderdale County, followed by Roland, Rutledge and Mays. At this point, James told the others to stay put while he took John's automobile and left. During this time, John Gowdy stayed with Roland and the two conversed. All the while, undercover Agents Rutledge and Mays were nearby. At about 8:00 o'clock, James Gowdy returned and, after some further discussions, is said to have sold Agent Rutledge five pieces of crack cocaine in exchange for a one hundred dollar ($100.00) bill.
A little over an hour later, Roland, Rutledge, and Mays met with Lt. Pierce and Agent Knight at MBN's Meridian office and discussed what had transpired. The officers decided they should make another buy from James Gowdy, and, in short order, they drove back to Lauderdale to the Lee General Merchandise Store parking lot. According to Agent Rutledge,
We got to the store and ... [Roland] got out of the car and went into the crowd. James Gowdy then came back to my car on the driver's side. He told me he had one more dosage unit of crack cocaine left if I wanted it. I told him I did and I gave him a twenty dollar bill. He gave me the crack cocaine. We left about 9:46 p.m.

C.
On November 23, 1987, the Lauderdale County grand jury returned an indictment charging James E. Gowdy with two counts of sale of cocaine, a Schedule II controlled substance. Miss. Code Ann. §§ 41-29-115(A)(a)(4), and -139(a)(1) (Supp. 1987). The indictment further charged John L. Gowdy with a single count of sale of cocaine.
On September 6, 1988, the Gowdys moved for an order that the prosecution disclose the name and address of the confidential informer. The prosecution promptly responded and advised the court and counsel that W.W. (Willie) Roland was the informer but gave no address. The defense pressed the matter, and on September 24, 1988, the Court held:
The defendants' motion for discovery of name and address of confidential informer is sustained. The state is directed to make diligent effort to obtain the address of the confidential informer, and if his address is ascertained, it shall promptly be furnished to the defendants.[2]
The Circuit Court called the case for trial on November 14, 1988, having denied the Gowdys' pre-trial motion for a severance of the counts and charges. In due course, the jury returned a verdict, finding James E. Gowdy guilty of two counts of sale of cocaine and John L. Gowdy guilty of a single count of sale of cocaine.
The Circuit Court then sentenced James E. Gowdy to a term of twelve years imprisonment in the custody of the Mississippi Department of Corrections, with four years suspended and five years on probation. The Court further ordered James Gowdy to pay a fine of $1250.00. The Court sentenced John L. Gowdy to a term of eight *32 years imprisonment within the custody of the Mississippi Department of Corrections, with four years suspended and five years on probation. The Court ordered that John Gowdy pay a $1000.00 fine.
Both Gowdys moved for a judgment of acquittal, notwithstanding the verdict or, in the alternative, for a new trial. The Circuit Court denied these motions in their entirety. This appeal has followed.

III.
We consider first the legal sufficiency of the evidence to undergird the judgments of conviction entered against the Gowdys. In the case of James L. Gowdy, we find competent and direct testimony by Agents Rutledge and Mays that on July 25, 1987, James Gowdy sold crack cocaine to Rutledge. The fact that James Gowdy took the witness stand and denied his guilt, challenging principally the prosecution's identification evidence, is beside the point. The evidence was such that reasonable and fair-minded jurors could have found James Gowdy guilty beyond a reasonable doubt of two counts of sale of cocaine. See, e.g., Gibson v. State, 580 So.2d 739, 741 (Miss. 1991); Turner v. State, 573 So.2d 1335, 1337 (Miss. 1990); Williams v. State, 463 So.2d 1064, 1068 (Miss. 1985); Johnson v. State, 461 So.2d 1288, 1293-94 (Miss. 1984); Sparks v. State, 412 So.2d 754, 756 (Miss. 1982).
The appeal of John L. Gowdy is a bit closer. Still, the evidence, viewed in the light most favorable to the verdict, reflects that John Gowdy was driving his brother, James, to meet with Roland and the two agents for the purpose of making the sale. John then drove his brother to the Rock Lounge, where he remained with Roland, Rutledge and Mays while James went to fetch the cocaine, and John was present when James returned and completed the sale. John's defense is that he was there but had no idea what was happening and, furthermore, there was another Gowdy present, his brother, David, who did take part. Nevertheless, Agents Rutledge and Mays positively identified John as a participant, and his guilty knowledge may be fairly inferred on these facts. Reasonable and fair-minded jurors could fairly have found beyond a reasonable doubt that John L. Gowdy aided and abetted his brother, James E. Gowdy, in the sale of cocaine to Agent Rutledge. Miss. Code Ann. § 97-1-3 (1972); Clemons v. State, 482 So.2d 1102, 1104-05 (Miss. 1985); Williams v. State, 463 So.2d at 1066; Sanders v. State, 439 So.2d 1271, 1275 (Miss. 1983); McGowan v. State, 375 So.2d 987, 990 (Miss. 1979); Landers v. State, 304 So.2d 641, 642 (Miss. 1974).

IV.

A.
We turn now to a point of procedural fairness. The Gowdys charge that the Circuit Court abused its discretion when it refused to grant them a continuance of their trial in the wake of the prosecution's failure to disclose the whereabouts of C.I. Roland. They present the issue against the backdrop of the substantial, albeit unsuccessful, defense they made at trial. The Gowdys presented David Gowdy, a brother, who said he, not James, took part in the sale. They sought to prove a Tommy Earl Hopson was the actual seller. They called a former law enforcement officer to vouch for their character. In this setting, the Gowdys say the prosecution's default in its duties under the prior order, coupled with the Court's denial of a continuance, denied them a shot at the most critical witness in the case, C.I.W.W. (Willie) Roland. They say the Court's denial of their motion was an abuse of sufficient magnitude that their convictions should be reversed.

B.
We are told at the outset we may not consider the point because, before the Circuit Court, the Gowdys failed to jump through said-to-be-requisite procedural hoops. What happened is this. Some nine weeks before trial, the Gowdys moved for discovery of the name and address of the confidential informant. More than fifty days remained before trial when the Circuit *33 Court entered its due diligence order. When Roland's address or whereabouts were not forthcoming, the defense moved ore tenus for a continuance prior to the beginning of trial on the afternoon of Monday, November 14, 1988. The Circuit Court responded:
BY THE COURT: ... [M]y ruling is going to be at this time to take your motion under advisement and continue with the trial. If at any time I am convinced that a continuance would result in the physical presence of this additional witness and that this witness would in some way be material to the defense in this case, I may sustain your motion and reschedule your case for future trial. I feel reluctant at this point to grant a continuance when I don't know, well, one of three things; whether or not the State has failed to make diligent efforts to locate the whereabouts of Roland. They may have. But, if not, secondly, if a continuance were granted whether or not Mr. Roland could be located and been [sic] required to testify. And, third, even if that were true, that he could be located and could be present with any testimony he had would be beneficial to the defense. From the statement, apparently, this witness has given in writing to the narcotics bureau previously it would not be in the defense's interest, at least superficially on its face would not be in the defense interest to have that witness here to testify. But, if during the course of the trial it is apparent that his whereabouts are known if necessary we can recess the trial and locate him. Then, I will give you an opportunity to interview him and then assess the situation at that time.
The Court then requested the defense to prepare an instanter subpoena for Roland. This was done, and the subpoena was given to Deputy Sheriff Sonny Vincent with instructions to have Roland present in court at 8:30 a.m. the following morning. The record reflects that Deputy Vincent never served the subpoena. In the end, the Circuit Court denied the defense motion.
Towards the end of the trial the Gowdys renewed their request that the informant be produced and failing that, that the Court judicially note "that the State did not provide the defense with the address of the confidential informer." The prosecution responded,
Excuse me, Judge. The last information that we had of last known location of him is I believe, as stated previously into the record, was that he was in Illinois or some place of that nature. That was the best information that the Bureau of Narcotics had at the time. That was the information I gave to defense counsel. I have no idea where he is or how he can be served.
The Gowdys persisted and at the end of the trial they renewed their motion for continuance so that additional efforts could be made to locate the informant. The motion was overruled.
In their post-trial motions for judgment of acquittal notwithstanding the verdict, or, in the alternative, for a new trial, the Gowdys reasserted generally each "pretrial motion" and "trial motion made by the defendant(s) [and] ... which the Court failed to sustain."
Notwithstanding, the prosecution argues here the point was not procedurally preserved. The precise problem is said to be the defense's failure to reassert specifically their continuance/confidential informant point in their motion for a new trial. Pool v. State, 483 So.2d 331, 336 (Miss. 1986), and Jackson v. State, 423 So.2d 129, 131-32 (Miss. 1982), do hold post-trial renewal of a motion for continuance a procedural requisite to appeal of the point. The apparent purpose of the rule is twofold: to assure an adequate record for considering the issue and to give the trial judge, who is so much closer to the scene than we, every opportunity to act prior to the expensive and time-consuming process of appellate review.
We hold what was done here more than meets Pool and Jackson. Defense complaints of being put to trial without C.I. Roland were voiced constantly before, at and during trial. The matter was explored on defense counsel's motion for continuance on the morning of trial. It was considered *34 again at the end of the defendants' case. Though there will be times when shotgun, catchall reassertions of error ought not be credited, these defendants' post-trial motions were technically adequate to preserve this well worn point.

C.
Our general discovery rule requires that, upon defense request, the prosecution disclose the names and addresses of all material witnesses. The rule extends to witnesses who may not be called at trial, where the witness may be reasonably expected to be helpful to the defense. See Rule 4.06(a)(6), Miss.Unif.Crim.R.Cir.Ct. Prac. (1979, as amended); United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Cummins v. State, 515 So.2d 869, 876 (Miss. 1987).
Rule 4.06(b)(2), Miss.Unif.Crim. R.Cir.Ct.Prac. (1979, as amended) provides a limited exception in the case of confidential informants:
(2) Informants. Disclosure of an informant's identify shall not be required unless the confidential informant is to be produced at a hearing or trial or a failure to disclose his or her identity will infringe the constitutional rights of the accused or unless the informant was an eyewitness to the event or events constituting the charge against the defendant.
By way of partial interpretation of the informant's exception, we have stated:
If the informant is a person who participated in the criminal activity or who is a material witness to facts of substantial relevance to the matter of whether the accused is guilty, his name ordinarily must be disclosed to the defense. On the other hand, a confidential informant who neither participated in the crime nor witnessed it ordinarily must remain undisclosed.
Ray v. State, 503 So.2d 222, 224 (Miss. 1986); Middlebrook v. State, 555 So.2d 1009, 1010 (Miss. 1990); Pinkney v. State, 538 So.2d 329, 348 (Miss. 1988); Arnett v. State, 532 So.2d 1003, 1008 (Miss. 1988); Swindle v. State, 502 So.2d 652, 658 (Miss. 1987); Turner v. State, 501 So.2d 350, 351-52 (Miss. 1987); Daniels v. State, 422 So.2d 289 (Miss. 1982); see also, Roviaro v. United States, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639, 645 (1956). Barrett v. State, 482 So.2d 239 (Miss. 1986), makes clear that this disclosure must be made in discovery and not just at trial and that the prosecution must disclose informant's "location," not just his name.
In the case at bar, we know that C.I. Roland was the initial contact with "Clyde," was the individual who first made contact with James Gowdy and introduced James to Agents Rutledge and Mays, was the person who stayed with John Gowdy while James went to fetch the crack, witnessed the first sale, then went to MBN's Meridian office with Lt. Pierce and Agents Knight, Rutledge and Mays. Thereafter, Roland went back to the Lee General Merchandise Store with this same MBN foursome and went into the crowd and got James Gowdy to come back out and make the second sale to Agent Rutledge. After his work was done, Roland made a written statement which reads:
I was with Agent Rutledge and Mays when they made a rock buy from John Gowdy on 7-25-87 at 7:57. Agent Tim Rutledge gave him one hundred dollars for five rocks. He was a black male about six feet tall, one hundred eighty pounds, about twenty-seven to thirty years of age.
The Circuit Court early appreciated the central role Roland played in this entire affair, and no doubt this is the predicate of the Court's pre-trial order that the prosecution not rest upon mere disclosure of Roland's name and statement, but "make diligent effort to obtain the address." See Barrett v. State, 482 So.2d at 240.
In the face of this order, the District Attorney's office, per se, did nothing, relying instead on MBN. The prosecuting attorney represented to the Court:
[T]he State as far as the District Attorney's office, as far as our work, as far as our knowledge of what the Bureau of Narcotics has done, at least what they have told us about locating the witness, Willie Roland, pursuant to the Court's *35 order as far as I know everything that could be done has been done. As a matter of fact, Judge, the man has pending charges for sale of cocaine, I believe. .. . So, the Bureau of Narcotics probably does have an interest in finding him if they could. They informed me that they have no idea where he is... .
This is conclusory talk with nothing to back it up. What concerns us is nothing before us suggests the District Attorney's office even told MBN the Court had ordered a pre-trial search for and disclosure of Roland's whereabouts.
MBN Agent Glenn Knight was the officer who in the beginning had procured Roland's services as a confidential informant to work the Gowdy case. On direct examination, the prosecuting attorney, perhaps unwittingly, elicited this from Agent Knight.
Q: Who was the C.I.?
A: W.W. Roland.
Q: W.W. Roland?
A: Yes, sir.
Q: Where is he know (should be now), do you know?
A: I have no idea.
Q: What efforts were made by you or your office to try and find him for this trial?
A: I did not look for him at all. I didn't know he was suppose to be here.
Q: If somebody looked for him it was somebody else in your office?
A: I do not know that either.
Lt. Pierce testified to like effect, that he did not know the Gowdys had filed for discovery, or that Roland's identity had been disclosed and, more particularly, he did not know that he was supposed to be trying to locate Roland. In the context of the sale-of-cocaine charges then pending against Roland, Lt. Pierce offered this most unusual testimony on cross-examination during the second day of trial:
Q: After the indictment was presented in this case, when was the next time you saw Willie Roland?
* * * * * *
A: ... I am not aware if I have saw him since other than yesterday when he was here in the courtroom.
Q: What occurred yesterday in the courtroom?
A: He was sitting out in the audience is when I first noticed him.
Q: Did you advise the District Attorney of that?
A: Yes, sir. The Assistant asked me if I could go and find you and inform you of that, which I did. But, at the time I couldn't locate you.
On re-direct, prosecuting attorneys established that Lt. Pierce  at the time he saw Roland sitting in the courtroom on the morning of the Gowdys' trial  was not aware of the order that the state "make diligent effort to obtain the address of the confidential informant."
The wording of the Circuit Court's order of November 14, 1988, nunc pro tunc September 24, 1988, is simple and clear: "The state is directed to make diligent effort to obtain... ." The District Attorney as the state's prosecutorial representative had the responsibility to direct those efforts and to that end enjoyed broad discretion. Just who searched for Roland's address  local law enforcement, MBN, the DA's investigator, or one of the prosecuting attorneys  mattered not. What is clear is that the order was directed to the prosecution in its corporate capacity. Here as elsewhere the state's prosecutorial arm is held to know what each of its members knows. See, e.g., Nixon v. State, 533 So.2d 1078, 1089-90 (Miss. 1987); Smith v. State, 500 So.2d 973, 980 (Miss. 1986); White v. State, 498 So.2d 368, 370 (Miss. 1986); Fuselier v. State, 468 So.2d 45, 46 (Miss. 1985); Box v. State, 437 So.2d 19, 25-26 fn. 4 (Miss. 1983) (Robertson, J., concurring), to cite only cases on the books before the prosecution was ordered "to make diligent effort" to find C.I. Roland.
On appeal, the Attorney General presses that we have never held the prosecution must produce the informant at trial, on pain of discharge of the accused if they fail, and the general point is certainly so. Copeland v. State, 423 So.2d 1333, 1335-36 *36 (Miss. 1982). What is important is that Copeland, carefully read, not to mention Rule 4.06(b)(2), authorized the Circuit Court's original order for discovery of the informant. Setting aside the case where the informant is in custody, the prosecution's duty to produce the informant is not absolute, as Copeland makes clear. Still, informants are not like other witnesses who may be thought equally accessible to all parties. By definition, informants are procured by the prosecution to develop cases. These scurrilous but necessary independent contractors would seem as accessible to the state after as before their work is done. We know from other cases MBN customarily assigns each C.I. a code number and keeps a file on him or her. And, should the informant disappear, the prosecution has available investigative facilities far beyond that of the defense. More pragmatically, we doubt many C.I.'s want their accuseds to know of their whereabouts. All of this adds up to the peculiar responsibility Copeland recognized the state must shoulder, to exercise due diligence to procure and disclose timely to the defense the witness/participant informant's "location."
Well before the present controversy, Barrett v. State, 482 So.2d at 240, grounded in Rule 4.06(b)(2); Roviaro v. United States, 353 U.S. at 60, 77 S.Ct. at 628, 1 L.Ed.2d at 645, and the constitutionally based fairness principles thereunder, U.S. Const.Amend. XIV; and Miss. Const. Art. 3, § 14 (1890), set forth the views that control us today. Barrett was a sale of marijuana case. The sale had been set up by a confidential informant who, like Roland here, had been a witness/participant and was thus discoverable. The day before trial the defense moved for disclosure of the informant's name and address and for an order requiring the informant's appearance at trial. Failing that, the defense sought a continuance. The Circuit Court inquired of the informant's whereabouts. Two MBN officers said "they did not know the confidential informant's whereabouts and did not have a file on her... ." Barrett, 482 So.2d at 240. The local sheriff said "he did not know who she was or her whereabouts although he had written her name on a piece of paper but could not find it." Barrett, 482 So.2d at 240. The Barrett Court, per (then) Presiding Justice Harry G. Walker, held this would not do, quoting Copeland at length, and concluding:
It was therefore error for the trial court to overrule appellant's motion for continuance and error not to direct the State to conduct a more thorough investigation as to the confidential informant's identity and whereabouts.
Barrett, 482 So.2d at 240. Barrett reversed and remanded for a new trial. Turner v. State, 501 So.2d at 351-53, is to like effect.
If anything, today's case is stronger for reversal. Here, the Circuit Court had specifically ordered prosecution diligence in discovery of Roland fifty-three days before trial. In Barrett there had been no such order, only Rule 4.06's general injunction that witness/participant informants are discoverable. Here, it seems rather clear no one told the MBN officers Roland's whereabouts had to be disclosed. Had the prosecuting attorneys told MBN of the order, it seems not unlikely that in fifty-three days someone with MBN could have found Roland (assuming MBN was not already looking for Roland on the sale of cocaine charge pending against him). Most incredibly, because no one told MBN of the order, Lt. Pierce did not know to nab Roland when he appeared at the courthouse the morning of the first day of trial!
The Circuit Court's principal concern  and reason for denying the Gowdys' motion  seems to have been its uncertainty how Roland would testify. The tenor of the Court's comments suggests the Court was saddling the Gowdys with the burden of proving that Roland would testify favorably to them before it would grant the continuance. The Court noted the brief written statement Roland had given the night of the sales. One interesting feature of that statement is that it mentions only one Gowdy, not two. Moreover, in the statement Roland has John Gowdy making the sale, when Agents Rutledge and Mays *37 say it was James. Because Roland appears to have had a sale-of-cocaine charge hanging over his own head, his participation in this entire affair invites skepticism, cf. Malone v. State, 486 So.2d 367, 369 (Miss. 1986), but these are not the reasons the Gowdys were entitled to a continuance when the prosecution failed to show diligence in making discovery.
The Circuit Court erred in insisting that it be satisfied Roland would be of assistance to the defense. But a moment's reflection makes clear that the Court is not suited by institutional responsibility or practical circumstance to make that judgment. The institutional role of impartial arbiter makes inappropriate the Court's deciding the partisan advocacy question whether the informant would aid (or harm) the defense. The Court's circumstance of detachment  the judge will and can never know the case as well as the lawyers  renders impractical a sensitive assessment of the informant's value as a witness. We have recognized these premises as we have repeatedly admonished that like decisions are best left to the affected parties and their counsel. See, e.g., Hunt v. State, 569 So.2d 1200, 1202-03 (Miss. 1990); Mitchell v. State, 539 So.2d 1366, 1373-74 (Miss. 1989); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986). Here, as elsewhere in discovery, the test is not whether the party can prove the witness of whom discovery is sought would have been favorable. The whole idea behind discovery is that the discovering party ordinarily does not know how the witness will testify. The test is a different one: has the party seeking discovery shown that the witness likely has substantial knowledge relevant to the case. Cf. Rule 26(b), Miss.R.Civ.P. The Gowdys easily meet this test on today's record, and, in the face of the prosecution's default in finding Roland, they were entitled at the very least to one reasonable continuance. See Turner v. State, 501 So.2d at 351-53. The Circuit Court abused its discretion when it denied their motion in its entirety.
We reverse the judgments of the Circuit Court and remand these cases for a new trial on all issues.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Because our scope of review of the facts is severely limited by reason of the jury's verdicts, we state the facts favorably to the prosecution.
[2] This ruling was reduced to writing in a formal order entered "this fourteenth day of November, 1988, nunc pro tunc for 9/24/88." It was no doubt based on this Court's decision in Barrett v. State, 482 So.2d 239 (Miss. 1986).