# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-01358-SCT

*A.D. COLEY a/k/a A. D. COLEY, JR. a/k/a "RABBIE"*
*a/k/a "RABBIT"*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/95 |
| TRIAL JUDGE: | HON. KENNETH LEVENE THOMAS |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | LAWRENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/2/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

On June 13, 1995, A.D. Coley was indicted by a Coahoma County grand jury on charges of aggravated assault and burglary of a dwelling. Coley was found guilty on each count and sentenced to ten years on the burglary charge and fifteen years on the aggravated assault charge. Aggrieved, Coley appeals to this Court, arguing that the conviction for aggravated assault was against the overwhelming weight of the evidence and that the trial court erred in denying peremptory challenges exercised by the defense. Finding the assignments of error raised by Coley without merit, we affirm.

## STATEMENT OF FACTS

On February 12, 1995, at approximately 12:15 p.m., M.M. Butler of Jonestown, Mississippi, arrived home from church. After entering the house, Butler testified that he heard some noise further in the

house and returned to his car to get his gun. Butler returned to the house and walked in the direction of the noise. Having broken into Butler's home, A.D. Coley, Robert Scott and Michael Larry were hiding in a closet area in the kitchen.

Butler testified that he arrived at the kitchen and heard a shot fired from a closet area. Butler shot into the air to scare the intruders and told them to "throw out their gun." A voice from the closet told Butler to throw down his weapon. Butler refused and stated that he would shoot through the door if they did not throw out their weapon. Two additional shots were fired from the closet and Butler returned fire through the closet door striking Michael Larry in the mouth. The gun was thrown from the closet and Butler ordered the intruders to come out. The trio crawled into the front of the house and Butler called 911 to request the police and an ambulance for Larry.

Butler held the men at gunpoint while waiting for the police. Upon hearing sirens, Butler momentarily turned away from the trio. At this point, Butler testified that A.D. Coley and Robert Scott overpowered him and took his gun. Coley and Scott fled the scene. Butler instructed Michael Larry to come out onto the porch because he was bleeding. After reaching the porch, Larry also fled the scene.

Jonestown Police Officer Leroy Austin recognized Coley as he was running from Butler's home and began following him in the police car. Austin chased Coley for a couple of blocks but eventually decided to return to the scene to make sure Scott and Larry had not hurt Butler. Coley was later arrested at a friend's home where he was hiding.

At trial, Scott and Larry testified on behalf of the State. Scott testified that the gun used by Larry to shoot at Butler belonged to Coley. Larry, however, testified that Scott initially had the gun but passed it to Coley on the way to Butler's home. Larry and Scott agreed that Coley brought the gun into Butler's home and handed it to Larry to shoot at Butler. Larry testified that Coley nor Scott encouraged him to fire the gun at Butler, but rather that he alone decided to fire the gun at Butler.

Following trial, Coley was convicted of burglary and aggravated assault. Aggrieved by the jury verdict, Coley now appeals to this Court, citing the following issues:

**I. WHETHER THE GUILTY VERDICT ON THE CHARGE OF AGGRAVATED ASSAULT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**II. WHETHER THE TRIAL COURT ERRED IN DENYING PEREMPTORY STRIKES EXERCISED BY THE DEFENSE.**

**DISCUSSION OF LAW**

**I. WHETHER THE GUILTY VERDICT ON THE CHARGE OF AGGRAVATED ASSAULT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

When reviewing challenges to the weight of the evidence, this Court proceeds as follows:

When reviewing a challenge to the weight of the evidence, this Court must determine whether the trial judge abused his discretion in denying a new trial. This Court, accepting as true all evidence favorable to the State, will determine whether "the verdict is so contrary to the

overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice."

*Taylor v. State*, 672 So. 2d 1246, 1256 (Miss.1996), *cert. denied*, 117 S.Ct. 486 (1996), *reh'g denied*, 117 S.Ct. 755 (1997)(*quoting Wetz v. State*, 503 So. 2d 803, 812-13 (Miss.1987)).

Coley was indicted for the crime of aggravated assault pursuant to Miss. Code Ann. § 97-3-7 (2)(b) which provides:

> (2) A person is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

The indictment specifically alleged that Coley was "aiding and abetting or acting in concert with another or others."

Coley now argues that the guilty verdict on the charge of aggravated assault was against the overwhelming weight of the evidence. Specifically, Coley argues that the State "failed to prove that Coley committed any act in aiding or abetting Mr. Larry in attempting to cause serious bodily injury to Mr. Butler. . . ." Coley argues that Larry's testimony establishes that he alone chose to shoot at Mr. Butler with no encouragement from Robert Scott or A.D. Coley.

In *Swinford v. State*, 653 So. 2d 912, 915 (Miss.1995), this Court discussed the theory of aiding and abetting. There, this Court held:

> [A]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender. *Sayles v. State*, 552 So. 2d 1383, 1389 (Miss.1989). *See Bullock v. State*, 391 So. 2d 601, 606 (Miss.1980), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981).

This Court further held:

> In the case of *Wynn v. State*, 63 Miss. 260 [(1885)], the Court said: "Aiding and abetting is defined to be 'the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator.' . . . And such aiding and abetting may be manifested by acts, words, signs, motions or any conduct which unmistakably evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition."

*Id.* (*quoting Walters v. State*, 218 Miss. 166, 171-72, 65 So. 2d 465, 467 (1953)).

At trial, Coley testified that he was not present at Mr. Butler's home on February 12, 1995. Coley testified that he, Scott and Larry left his home at approximately 11:00 a.m. and walked "uptown". Coley testified that he separated from Scott and Larry and arrived at Brenda Jackson's house at 11:50, a.m where he remained for approximately two hours.

In sharp contrast to the account given by Coley, the testimony of Scott and Larry provided the jury with ample evidence from which the jury could conclude that Coley was present at the scene and aided Larry in the commission of the aggravated assault. Robert Scott first testified for the State. Scott testified that the gun used by Larry to shoot Mr. Butler belonged to Coley. Scott testified that he first saw the gun at Coley's house earlier on February 12, 1995, and that Coley had the gun in his pocket when they arrived at Butler's home. Scott testified that after hearing Mr. Butler arrive home, the trio ran into the closet, Coley stated "Here, Mike" and handed the gun to Larry. Scott testified that after Coley handed the gun to Larry, Larry shot the gun out of the closet.

Michael Larry also testified on behalf of the State. At trial, Larry identified the gun that was used in the shooting. Unlike Scott, Larry testified that Scott, not Coley, was in possession of the gun prior to arriving at Butler's home. Larry testified that Scott gave the gun to Coley on the way over to Butler's home and Coley passed the gun to Larry when the trio ran into the closet.

On cross-examination, defense counsel questioned Larry about Coley's role in the decision to shoot the gun. Larry testified that he alone decided to fire the shots at Mr. Butler. Moreover, Larry agreed that neither Scott or Coley encouraged him to fire the weapon. On redirect, Larry testified that he did not know why Coley gave him the gun, but that he simply fired the weapon after Coley gave it to him.

Coley now argues that because Larry alone decided to fire the weapon, there is no evidence to demonstrate that he aided and abetted in the commission of the offense of aggravated assault. This Court was faced with a similar claim in *Hogan v. State*, 580 So. 2d 1275 (Miss.1991), wherein this Court affirmed the aggravated assault conviction despite Hogan's claim that the evidence did not support the theory that she aided and abetted the principal. There, this Court stated:

> From all the evidence presented at the trial, the jury reasonably might have concluded that, although Rose Marie was not the "trigger man", she was present, aiding and abetting the crime since she had encouraged Scrivner and Mowdy to go back to the Dodge City nightclub for the purpose of committing the aforesaid crime *and/or by providing the gun used in the crime*, and by directing the van to the scene of the crime.

*Id.* at 1278 (emphasis added).

Here, the evidence, when viewed in the light most favorable to the verdict, demonstrated that Coley conspired with Scott and Larry to burglarize the home of Butler. During the commission of the burglary, Larry, using a firearm provided to him by Coley, shot at Butler. Therefore, contrary to Coley's assertions, the jury had before it evidence that Coley was present at the scene, owned the weapon used in the crime and handed the gun to Larry immediately prior to the assault.

Moreover, a reasonable inference from the fact that Coley handed the weapon to Larry as Butler approached the closet area is that Coley intended the weapon be fired at Butler. In *Gowdy v. State*, 592 So. 2d 29 (Miss.1991), the defendant drove his brother to meet two undercover agents in order to make a sale of cocaine. Gowdy remained on the scene while his brother went to fetch the cocaine and was present when his brother returned and completed the sale. On appeal, Gowdy argued that although he was present he had no idea what was happening. After review, this Court held that "his guilty knowledge may be fairly inferred on these facts." "Reasonable and fair-minded jurors could

fairly have found beyond a reasonable doubt that John L. Gowdy aided and abetted his brother, James E. Gowdy, in the sale of cocaine to Agent Rutledge." *Id.* at 32.

In light of *Gowdy* and *Hogan* and the evidence presented to the jury, reasonable and fair-minded jurors could have found beyond a reasonable doubt that Coley aided and abetted Michael Larry in the commission of aggravated assault. Coley's conduct on February 12, 1995, clearly "evinces a design to encourage, incite or approve of the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition." *Swinford v. State*, 653 So. 2d 912, 915 (Miss.1995). This issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING PEREMPTORY STRIKES EXERCISED BY THE DEFENSE.

Coley next argues that the trial court erred in denying peremptory strikes exercised by the defense. The State tendered a panel of twelve jurors and the defense then exercised its six peremptory challenges. Following the challenges, the State objected to four peremptory challenges exercised against white jurors under the authority of *Batson v. Kentucky*, 476 U.S. 79 (1986), and alleged that the defense demonstrated a pattern of discrimination. The trial court required the defense to give race-neutral reasons for the challenges and after due consideration of the articulated reasons reinstated two jurors. Coley now assigns the reinstatement of the jurors by the trial court as error.

In *Griffin v. State*, 610 So. 2d 354 (Miss.1992), this Court was faced with a similar factual situation. Griffin exercised all of his peremptory challenges against white male jurors. The prosecution raised a *Batson* objection and the trial court required Griffin to articulate race-neutral reasons for the peremptory strikes. Griffin argued that *Batson* did not apply to criminal defendants and therefore as a matter of trial strategy the defense should be allowed to strike white jurors solely on racial grounds. The trial court rejected four of the five peremptory strikes for which Griffin could not articulate a race-neutral reason and reinstated the challenged veniremen.

In rejecting Griffin's assignment of error, this Court was guided by *Georgia v. McCollum*, 505 U.S. 42, 59 (1992), wherein the United States Supreme Court held that "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges." This Court specifically relied upon the following language in *McCollum*:

> Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same--in all cases, the juror is subjected to open and public racial discrimination. . . . We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.

*Id.* at 49, 59.

The issue before this Court is whether the trial court erred in concluding that defense reasons for the peremptory strikes were not race-neutral and therefore ordering the jurors reinstated. Our standard of review is as follows:

> [A] trial judge's factual findings relative to [the] use of peremptory challenges . . . are to be accorded great deference and will not be reversed unless they appear clearly erroneous or

against the overwhelming weight of the evidence.

*Stewart v. State*, 662 So. 2d 552, 558 (Miss.1995)(*quoting Lockett v. State*, 517 So.2d at 1349-50 (Miss.1987)).

The first juror complained of by Coley is Juror Gullick. The defense stated that Gullick was struck because "she had served on a jury before, on a burglary case which is the same type of case here, and she voted guilty." The trial court initially accepted the challenge of this juror, however, the State responded that Gullick "was on a drug case not a burglary case." Moreover, the State responded that Juror Number 6, a black female, served on a burglary case ten years ago and voted guilty yet was not struck by the defense.

Due to the conflict between the State and the defense, the trial court called Gullick into the courtroom and questioned her regarding her prior jury service. Gullick indicated that she had served on a drug-related case. The trial court then reinstated Gullick and instructed the defense to use that peremptory strike elsewhere.

The State again raised a *Batson* objection when the defense exercised peremptory challenges against jurors 19 and 20, both white males. Coley indicated that Juror Number 20 was struck because he was related to the victim of a violent crime. Juror Number 19 was struck because he worked at night and the defense indicated its concern about his ability to concentrate on the trial. Each reason was accepted as race neutral and the proceedings continued.

Following the exercise of a peremptory strike against Juror Number 23, a white juror, the State raised a *Batson* objection. The defense responded that this juror "has a son whose been, I guess, a Federal probation officer, also quite friendly with Officer Tim Fortenberry, goes to church with him, close friends." The State agreed that the juror's son was in fact a federal probation officer. However, the State noted that "previous black jurors with law enforcement connections, family members, that have not been struck." The State then gave three examples of black jurors who indicated that family members were employed in a law enforcement career. The State also responded that Officer "Tim Fortenberry is not a witness in this case or involved in this case in any respect" and noted that this "isn't a city case but rather a county case."

Following the State's response, the trial court found that "both reasons given for striking this juror have been successfully challenged." Defense counsel further responded that this juror was distinguished from other jurors by the fact that the juror went to church with and was friendly with Officer Fortenberry. The State again responded that Officer Fortenberry was not involved in the case and the trial court concluded that the juror had not been successfully challenged.

A review of the record reveals that the reasons articulated by Coley in the exercise of his peremptory challenges of Jurors 5 and 23 were successfully rebutted by the State. For example, the race-neutral reason articulated for striking Juror Gullick was the fact that she had served on a previous burglary case and voted guilty. The State also noted that a black juror who indicated that she had served on a burglary case and voted guilty was not struck by Coley. Moreover, upon being recalled by the trial court, Juror Gullick clarified that she did not serve on a burglary case, but rather on a drug case. After Juror Gullick indicated that she had not served on a burglary case, the trial court asked if either of the attorneys had anything further. Defense counsel made no further objection and the trial court

reinstated Juror Gullick.

The articulated reason for striking Juror 23 was that his son was a federal probation officer and the juror was friendly with Officer Tim Fortenberry. The State agreed that the juror's son was a federal probation officer, but noted that Officer Fortenberry had no connection with the present case. Moreover, the State noted that several black jurors with law enforcement connections had not been struck. Defense counsel responded that the reason for the strike was the friendship with Officer Fortenberry. The State reiterated that Officer Fortenberry was not connected with the instant case and the trial court then reinstated Juror 23.

In *Hernandez v. New York*, 500 U.S. 352 (1991), the United States Supreme Court held that:

> The decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal . . . . Deference makes particular sense in this context because the finding will largely turn on an evaluation of credibility.

*Id.* at 353.

A review of the record reveals that the reasons articulated by Coley were successfully rebutted by the State. The trial judge evaluated each reason set forth by defense counsel and allowed response by the State. Moreover, the trial court allowed the remaining peremptory strikes when defense counsel articulated race-neutral reasons. In light of the rebuttal offered by the State and the deferential standard of review, it does not appear that the reinstatement of Jurors 5 and 23 was "clearly erroneous" or "against the overwhelming weight of the evidence." *See Stewart v. State*, 662 So. 2d 552, 558 (Miss.1995)(*quoting Lockett v. State*, 517 So.2d at 1349-50 (Miss.1987)). There is no merit to this issue.

## CONCLUSION

A close review of the record below reveals ample evidence from which the jury could find Coley guilty beyond a reasonable doubt of burglary and aggravated assault. Furthermore, Coley fails to establish that the trial court erred in reinstating jurors challenged by the defense. Finding no error in the proceedings below, we affirm.

**COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY RESTITUTION TO THE VICTIM OF $300.00 AFFIRMED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IMPOSED IN COUNT II SHALL BE SERVED CONCURRENTLY WITH SENTENCE IN COUNT I.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**