# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00762-SCT

*PHIL WILSON, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/16/97 |
| TRIAL JUDGE: | HON. HENRY LAFAYETTE LACKEY |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT |
| ATTORNEY FOR APPELLANT: | THOMAS C. LEVIDIOTIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY KLINGFUSS |
| DISTRICT ATTORNEY: | JIM HOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/02/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/23/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## SUMMARY

¶1. Phil Wilson, Jr. ("Wilson") was indicted, tried, and convicted of the armed robbery of a Domino's pizza store. Wilson timely appealed, raising the following issues for this Court's consideration:

> **WHETHER THE TRIAL COURT ERRED IN DENYING WILSON'S MOTION FOR CONTINUANCE MADE ORE TENUS IMMEDIATELY PRIOR TO TRIAL AND RENEWED FOLLOWING THE CONCLUSION OF THE STATE'S CASE-IN-CHIEF.**

¶2. Because we find no merit in the issue raised by Wilson, we affirm his conviction.

## STATEMENT OF THE FACTS

¶3. On the night of August 1, 1996, Mr. Kuben Rhamathan ("Rhamathan") was working at his job at Dominoes Pizza in Oxford, Mississippi. Rhamathan had just sent his last driver out and had turned to lock the door when he was faced with a man pointing a sawed off shotgun at him. Rhamathan testified that the man was light black, slender and tall, with bushy afro style hair, and a blue bandanna tied across his face. The man demanded money, and Rhamathan quickly gave it to him. After the man exited the store, Rhamathan called the police.

¶4. As the perpetrator was exiting the store, one of the drivers, Julius Bosket ("Bosket"), was returning from his last delivery around 12:30 a.m. The robber aimed the gun at Bosket and continued to exit the store. The robber then turned and went up the small hill to a waiting car. Bosket also stated that the robber was a black male, tall and slender.

¶5. The subsequent police investigation resulted in the apprehension and arrest of four suspects, Stacy Burdette ("Burdette"), Daniel Toles ("Toles"), Broderick Rogers ("Rogers"), and Wilson. Rogers and Burdette testified for the State that the four had in fact robbed the Dominoes and that Wilson was the gunman. Evidence produced by the State showed that the three men picked Wilson up, that it was Rogers' gun, and that they all four robbed the Dominoes establishment. Wilson attempted to demonstrate that he was not even present at the robbery; that he had been with the other three earlier in the evening; but, that he was dropped off prior to the robbery at Kelcy Wilburn's ("Ju-Ju") house.

¶6. The morning of trial Wilson's attorney made an *ore tenus* motion for a continuance, averring that Wilson had two potential alibi witnesses, Ju-Ju and Emanuel Owens ("Owens"), and that he was unable to obtain their presence at trial. The trial judge denied the motion on the grounds of timeliness. Wilson renewed this motion at the close of the State's case, where it was again denied.

¶7. The jury subsequently found Wilson guilty, but was unable to arrive at a sentence. The trial judge sentenced Wilson to 30 years with 10 suspended and 20 to serve.

## DISCUSSION OF THE LAW

### WHETHER THE TRIAL COURT ERRED IN DENYING WILSON'S MOTION FOR CONTINUANCE MADE ORE TENUS IMMEDIATELY PRIOR TO TRIAL AND RENEWED FOLLOWING THE CONCLUSION OF THE STATE'S CASE-IN-CHIEF

¶8. "The grant or denial of a continuance lies within the sound discretion of the trial court." *Hughey v. State*, 512 So.2d 4, 6 (Miss. 1987 )(*citing Gates v. State*, 484 So.2d 1002, 1006 (Miss. 1986); *Carter v. State*, 473 So. 2d 471, 475 (Miss. 1985)); *See also Gates v. State*, 484 So.2d 1002, 1006 (Miss. 1986)("Of course, the granting or not granting of a continuance is within the sound discretion of the trial judge."); *Carter v. State*, 473 So.2d 471, 475 (Miss. 1985)("It is well established in Mississippi that trial judges have broad discretion in granting a continuance."); *Norman v. State*, 385 So.2d 1298, 1302 (Miss. 1980). This judicial recognition of the trial judge's discretion is also statutorily recognized as follows:

On all applications for a continuance the party shall set forth in his affidavit the facts which he

expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating in what such diligence consists, and that the continuance is not sought for delay only, but that justice may be done.

. . .

A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.

Miss. Code Ann. § 99-15-29 (1994).

¶9. Before we reach the merits of Wilson's assignment of error, we first consider whether Wilson properly preserved the issue of the continuance for appeal. The State argues that Wilson is procedurally barred because he failed to raise the trial judge's denial of his motion and renewed motion for a continuance in his motion for a new trial. *See **Pool v. State***, 483 So. 2d 331, 336 (Miss. 1986). Paragraph II of Wilson's motion reads:

Defendant would show that the verdict was contrary to the weight of the evidence, and that various rulings of the Court were erroneous and that objections were improperly denied, and the Defendant was denied due process by being indicted and convicted on charges that were not supported by sufficient evidence and of which no reasonable juror could convict the defendant.

¶10. This Court in ***Gowdy v. State*** made clear the practical reasons behind this procedural rule:

The apparent purpose of the rule is twofold: to assure an adequate record for considering the issue and to give the trial judge, who is so much closer to the scene than we, every opportunity to act prior to the expensive and time- consuming process of appellate review.

***Gowdy v. State***, 592 So.2d 29, 33 (Miss. 1991).

¶11. In ***Gowdy*** the Court was faced with a similar situation. The Gowdys had made several attempts to obtain a continuance to locate an informant. ***Gowdy***, 592 So. 2d at 34. In their post trial motions, the "Gowdys reasserted generally each 'pretrial motion' and 'trial motion made by the defendant(s) [and] ... which the Court failed to sustain.'" ***Gowdy***, 592 So. 2d at 33. This Court found such general restatement to be sufficient, "We hold what was done here more than meets ***Pool*** and ***Jackson***. Defense complaints of being put to trial without [the informant] were voiced constantly before, at and during trial." ***Gowdy***, 592 So. 2d at 33.

¶12. In the instant case, it was clear that Wilson had put the issue squarely before the trial court judge at his *ore tenus* motion for a continuance and his renewed motion for a continuance. We find that the general restatement of the alleged error in the motion for new trial is sufficient to overcome the procedural bar under ***Gowdy***.

¶13. The facts demonstrate that Wilson himself was responsible for the tardiness of the motion. The

record does not reflect the exact date at which Mr. Wilson's attorney became aware of the possible alibi witnesses, but it does reflect that Wilson's attorney knew about them some time before trial, and rather than attempt to contact them, relied on Wilson's representations that "he would have them contact my office." Wilson's attorney filed no motion for a continuance, but did notice the State by letter of March 24 that he intended to call Ju-Ju and Owens as alibi witnesses.

¶14. On April 6, Wilson gave his attorney two phone numbers, which the attorney found to be inoperable. Still, Wilson's attorney made no written motion for a continuance. The night before trial he did call the sheriff's department to ask that these witnesses be made available for trial. The sheriff's office was unable to locate the witnesses. The record reflects no prior subpoena issued for these witnesses, although Wilson's attorney represented that the morning of trial he had served subpoenas for the two witnesses and the court itself issued attachment following the denial of the motion.

¶15. Wilson's attorney represented that he had talked to the prosecutor's office and thought that it was understood that he would be unable to go to trial without these witnesses, but the prosecutor denied that there was any agreement that the prosecutor was responsible for bringing the two witnesses to trial.

¶16. The trial judge overruled the motion on grounds of timeliness. Later, Wilson's defense counsel renewed his motion and averred that the sheriff's office had informed him that one of the witnesses had apparently called the police station and stated that he knew why he was wanted in court and had no intention of appearing. Wilson's attorney then averred that his client had informed him that this witness, Ju-Ju, was an alibi witness, and that the defense could not effectively go on without Ju-Ju's presence. Wilson's attorney requested a continuance until Saturday, which was denied by the trial judge for the following reasons.

> This matter was set for trial by prior order of the court several weeks prior to this term of court. It was set for trial by order of Judge Kenneth Coleman on the 28th day of February 1997. Set down for trial on Monday April 7, 1997. Because of other involvement of the court it was set later in this week. I am certain from what Mr. Levidiotis has informed the court of that he believed that these friends of the defendant, Emanuel Owens and Kelcy Wilburn and Antonio Manning, would come forth and assist their friend. And I am certain that based upon that he -- his defense was built around that and from what he said his client assured him that they would be present and it was not until the 10th day of April that he, Mr. Levidiotis, verbally requested subpoenas issued for those and on the 10th day of April he issued subpoenas. That was the date that the matter was set for trial. And having been a defense counsel in the past, I understand how you rely upon what your client tells you, but the motion is going to be overruled because of timeliness of the issuance of the subpoenas. I understand from law enforcement they are still looking and if they are found they will be brought right in and be allowed to testify. For that reason, those reasons the court is going to overrule the motion.

¶17. It is abundantly clear that Wilson held in his hands the ability to tell his attorney at any point that these witnesses would be hostile, or even difficult to locate. It is also clear that the trial judge felt that Wilson's failure to timely do so counted against granting a continuance.

¶18. In *Medina v. State,* this court affirmed the denial of a continuance because the defendant had

failed to procure a witness from federal prison. This Court stated,

> Given that Medina only requested Fernandez be present on the Friday before the trial, coupled with the fact that Medina relied solely on the State to secure Fernandez, and that the process to secure such a prisoner generally requires thirty to ninety days, this Court does not find the trial court abused its discretion. Had this witness been critically important to the trial, the recommended course of conduct would have been to secure the presence of that witness well in advance of trial; or at least before the last working day before trial.

*Medina v. State*, 688 So.2d 727, 732 (Miss. 1996).

¶19. As in *Medina*, as witnesses important to the defendant's case, these individuals should have been contacted well before trial. Furthermore, as in *Medina*, Wilson's attorney, having discovered that they would likely not be present at trial, then relied completely on the State to procure these witnesses. Wilson, as the criminal defendant, had the first responsibility and was in the best position to ensure that his attorney was made aware of these witnesses and aware of potential difficulties in obtaining them.

¶20. It should be noted that while the general restatements of error contained in Wilson's motion for new trial may be sufficient to overcome the procedural bar, this Court has held that in the context of a denied motion for continuance for absence of a witness some showing of due diligence must be made:

> The appellant complains that the court erred in refusing to grant this continuance because of the absence of the witness, but the proper showing of due diligence was not made in that it discloses no effort on the part of the defendant to procure the presence of the witness until the trial of the case was practically in progress. In addition, it was not followed up by the affidavit of the absent witness in support of the motion for a new trial, nor was any showing then made that conformity with the rule was not practicable.

*Thigpen v. State*, 206 Miss. 87, 39 So.2d 768, 769 (1948).

¶21. Another reason for requiring that the issue be raised in a motion for new trial is that in this way, the prejudice can be assessed. The testimony that would have been offered can be shown in the case of missing witnesses, as here. We cannot reverse because we have no idea what their "witnesses" would have said in aid of Wilson.

¶22. In sum, this Court holds that the trial judge was well within his discretion to deny Wilson's untimely motion for a continuance. Wilson's conviction for armed robbery is affirmed.

¶23. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN YEARS SUSPENDED AND TWENTY YEARS TO SERVE AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**