WALTERS, et al. *v.* STATE.

June 8, 1953

No. 38783          34 Adv. S. 204          65 So. 2d 465

*Frank F. Mize,* Forest, for appellants.

*George H. Ethridge,* Assistant Attorney General, Jackson, for appellee.

KYLE, J.

The appellants, Ned Walters and Albert A. Kemph, Jr., were indicted, tried and convicted in the circuit court of Scott County on a charge of burglary, and were sentenced to imprisonment in the state penitentiary for terms of three and one-half years each. From the judgments thus rendered they prosecute this appeal.

The building which the appellants were charged with breaking and entering was a Standard Oil Company

gasoline service station building, located at the intersection of U. S. Highway No. 80 and State Highway No. 35, in the City of Forest. The building was occupied by Robert L. Harvey, who operated a gasoline service station therein. The burglary was committed during the night of the first Sunday of September, 1952. Roger Wade, an employee of Harvey, testified that he closed the service station about 8:30 p. m., and that he fastened the windows and locked the doors of the building before leaving. He stated that, when he returned to the service station the next morning, the doors of the building were still locked, but he found that a small Westinghouse radio, which he owned and which was kept on the shelf in the grease room, was missing.

Hubert Henderson and B. C. Sessions, police officers of the City of Forest, testified that they saw the appellants sitting in an old Dodge car, with a Nevada license tag on it, near the service station about 10 o'clock on the night the station was burglarized; that they approached the car and asked the two men if they were having trouble, and they said "no." The officers became suspicious, and they drove up the road a short distance, cut off the lights of their car, and drove back to a place near the service station where they could watch the appellants' movements. After a time, Walters got out of the Dodge car, stooped over and ran toward the service station building. The officers did not see Walters enter the building; but a few minutes later they saw him come out of the building, close the door behind him, and run around the building. The officers then separated, and one of them approached the building from the rear, and the other from the front. They found Walters standing near a truck trailer and arrested him. They immediately searched him and took from him a snub nose 38 pistol, which was loaded, 18 packages of cigarettes of assorted brands, and a pair of white gloves. In the meantime, Kemph, who was in the Dodge car when the officers ap-

proached the service station, got out of the car and disappeared, while the officers were closing in on Walters. The officers found a small radio in the Dodge car, which Roger Wade identified later as the radio which had been taken from the service station during the night.

George Hawkins, an employee of the State Forestry Commission, testified that he saw the man who was later identified as Kemph on the roadside about seven or eight miles south of Forest on Monday morning, and Kemph thumbed a ride with Hawkins into Raleigh. When they got to Raleigh Kemph asked Hawkins whether the street that they were on was the main street of the town and how far it was to the next town. Hawkins' suspicions were aroused, and after putting Kemph out of the car Hawkins notified the deputy sheriff. The deputy sheriff arrested Kemph soon thereafter and lodged him in the county jail, where he remained until the date of the trial.

A. E. Bounds, the sheriff of Smith County, testified that, while Kemph was in the county jail at Raleigh, he made a statement to him, in the presence of Barney Watkins, a state highway patrolman, concerning the burglary. Bounds said that Kemph's statement was a voluntary statement, and that no threats had been made to procure a statement from Kemph, and that no inducement had been offered to Kemph to cause him to make such statement. Bounds testified that Kemph had told him and the highway patrolman that he and Walters had parked their car at the service station sometime before the officers appeared and asked them what they were doing; that after the officers had spoken to them and had left Walters said to him the service station looked like a good place and he would go in if Kemph would keep watch, and that, if Kemph saw anybody coming he should light a cigarette. Bounds testified further that Kemph said that Walters then got out of the car and went toward the service station, and that when he saw a car approaching he lighted a cigarette and got out of the car and left.

Patrolman Barney Watkins corroborated Bounds' statement concerning the admissions made by Kemph in his conversation with the sheriff.

The appellants both testified in their own behalf. Kemph testified that his home was in Johnson City, Kansas, and that he and Walters left Johnson City for the purpose of finding a place to settle down and get a job. Kemph stated that he and Walters were seated in the Dodge car near the service station on the night of the burglary, when the police officers approached them and asked them if they were having any trouble; that they told the officers they were just resting; that after the officers left Walters said something about breaking into the service station, and Kemph told him that he better not do it; that Walters got out of the car and went behind some parked trucks; and that Kemph then got out of the car and left. Kemph stated that he did not see Walters enter the service station; and Kemph denied that he had made a statement to the sheriff to the effect that it was understood that he was to watch while Walters entered the service station, and, if he saw a car approaching, he should light a cigarette. Kemph stated that he had no understanding with Walters that he was to light a cigarette if he saw the officers approaching. On cross-examination Kemph admitted that he had a criminal record, and that he had been convicted of car theft.

Walters testified that his home was in Johnson City, Kansas, and that he and Kemph had driven to Forest from Columbus, Georgia, and were headed back west at the time they were arrested. He testified that he had purchased the radio, which was found in his car, from a hitchhiker, a soldier who was on his way to Fort Benning, and that he had put the radio in the back of the car. He stated that the hitchhiker had told him that he would get him some cigarettes, and that the hitchhiker had returned later with fifteen packages. Walters denied

that he broke and entered the service station building, and he denied that he had told Kemph to keep watch and if he saw a car approaching to light a cigarette. He admitted that he had been in trouble before, and that he had been convicted on a charge of driving a stolen automobile in California.

The appellants have assigned as errors on this appeal the action of the lower court in overruling their motions to exclude the evidence and for a directed verdict of not guilty and the refusal of the lower court to grant their requests for peremptory instructions.

But the main point argued by the appellants' attorney in his brief is that the evidence was insufficient to show that Kemph assisted in, or aided and abetted Walters in the commission of the crime. The appellants' attorney says that the only facts proved to connect Kemph with the burglary were that Kemph was Walters' traveling companion and was with Walters at the time Walters decided to break and enter the service station building, and that Kemph stated to the sheriff and the highway patrolman in the jail at Raleigh that, when he saw a car approaching after Walters had entered the service station building, he lighted a cigarette, as Walters had told him to do, for the purpose of letting Walters know that a car was approaching. And the appellants' attorney says that this evidence was insufficient to show that Kemph counseled, commanded or influenced Walters in the commission of the crime.

But this Court held in the case of Harrel v. State, 39 Miss. 702, 80 Am. Dec. 95, that ▇▇ ▇ assistance rendered the principal before a felony is completed, to enable the principal to avoid arrest therefor, makes the one rendering the assistance an accessory before and not after the fact. And in the case of Wynn v. State, 63 Miss. 260, the Court said: ▇▇ ▇ "Aiding and abetting is defined to be 'the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its

commission, doing some act to render aid to the actual perpetrator.' Bouvier's Law Dictionary. And such aiding and abetting may be manifested by acts, words, signs, motions, or any conduct which unmistakably evinces a design to encourage, incite or approve of, the crime, or even by being present, with the intention of giving assistance, if necessary, though such assistance may not be called into requisition.''

It is true that in the later case of Crawford v. State, 133 Miss. 147, 97 So. 534, the Court qualified the statement made in the Wynn case, supra, by saying that ''Mere presence, even with the intention of assisting in the commission of a crime cannot be said to have incited, encouraged, or aided the perpetrator thereof unless the intention to assist was in some way communicated to him.'' But, in the case that we have here, the State's evidence connecting Kemph with the crime went much further than merely showing that Kemph was present at the scene of the crime under circumstances which might indicate an intention on his part to assist Walters in the commission of the crime. Kemph's statement to the officers indicated that he actually served as a watcher for Walters while Walters entered the building. The case seems to fall clearly within the rule stated in Wharton's Criminal Law, Vol. 1, p. 341, par. 256, as follows:

''Nor is it necessary that the party should be actually present, an ear or eyewitness of the transaction, in order to make him principal in the second degree; he is, in construction of law, present aiding and abetting, if, with the intention of giving assistance, he be near enough to afford it should the occasion arise. Thus, if he be outside of an inclosure, watching, to prevent surprise, or for the purpose of keeping guard, while his confederates are inside committing the felony, such constructive presence is sufficient to make him a principal in the second degree.''

Section 1995, Code of 1942, provides that ''Every person who shall be an accessory to any felony, before the

fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not."

The jury heard the witnesses testify, and the jury had a right to believe that Kemph made the statement to Sheriff Bounds and Patrolman Watkins that they said he made to them about the lighting of the cigarette. The testimony was sufficient to warrant the jury in finding that Kemph aided and abetted Walters in the commission of the crime.

There was no error in the action of the trial judge in refusing to grant the peremptory instructions requested by the appellants, and we think that the evidence is sufficient to support the verdict of the jury. The judgments of the lower court are therefore affirmed.

Affirmed.

*Roberds, P. J.,* and *Holmes, Ethridge* and *Lotterhos, JJ.,* concur.