# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01718-COA

**JAMES JOHN RODGERS A/K/A JAMES J. RODGERS A/K/A JAMES RODGERS**                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/0213 |
| TRIAL JUDGE: | HON. JOHN C. GARGIULO |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MURDER AND SENTENCED TO LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 11/18/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**ROBERTS, J., FOR THE COURT:**

¶1.     James John Rodgers was convicted, in the Harrison County Circuit Court, of murder and sentenced to life in the custody of the Mississippi Department of Corrections. Rodgers filed post-trial motions, which the trial court denied. In his appeal, Rodgers argues the following: (1) the trial court committed plain error in giving a self-defense jury instruction containing "at peril" language; (2) there was insufficient evidence to support the guilty

verdict; and (3) the guilty verdict was against the overwhelming weight of the evidence. Finding no reversible error, we affirm.

FACTS

¶2. On January 24, 2011, Rodgers was at his home in Gulfport, Mississippi, along with Megan Taylor (his girlfriend), Jessie Rodgers (his son, referred to as Jessie), and Bridget Waller (Jessie's girlfriend). Taylor received a phone call from Clinton Jackson, a prior boyfriend. Jackson was purportedly upset about photographs taken by Rodgers showing Taylor's car at Jackson's house. Rodgers and Jackson spoke briefly. Taylor testified she heard Rodgers tell Jackson something like "come talk face-to-face." Taylor and Waller both testified Rodgers was agitated after his conversation with Jackson.

¶3. Approximately thirty minutes later, Jackson came to Rodgers's home and knocked on the door. Jessie answered and was instructed by Rodgers not to let Jackson inside. Jessie escorted Jackson to his car.

¶4. While escorting Jackson to his car, Jessie testified Jackson was upset, shouting he would not leave until the matter between Jackson and Rodgers was settled. Jessie told Jackson he was going to call the police if Jackson did not leave. Jackson exited his car and began to hit Jessie. The two began fighting inside the driver's side door of Jackson's car. Jessie testified that he saw a pocket knife on the console of Jackson's car, but never saw Jackson attempt to grab it. Jessie began to back away from Jackson just as Rodgers emerged from the house. Rodgers was carrying a gun. According to Jessie, Jackson stepped towards Rodgers, then Rodgers shot Jackson in the chest. Jessie testified Jackson was approximately ten to fourteen feet from Rodgers when Rodgers fired one shot, striking the victim in the

2

chest. Jackson died on the scene.

¶5. Taylor testified that while Jessie and Jackson were outside, Rodgers retrieved his gun from the bedroom. Taylor stated she attempted to keep Rodgers from going outside to confront Jackson, while armed, but was unsuccessful. Taylor testified Rodgers was "ranting and raving." After hearing the gunshot, Taylor went outside and ran to Jackson. She stated he was on the ground right beside his car. Taylor also said Jackson's car was running.

¶6. Rodgers denied Taylor tried to keep him from leaving the house. Rodgers further testified he shot Jackson in self-defense because he thought he saw Jackson looking in the console of his car and assumed Jackson was searching for a weapon. However, Rodgers told the police he walked towards Jackson while he was fighting with Jessie, pulled Jackson off of Jessie, and shot Jackson. Furthermore, Rodgers never told the police he thought Jackson might be armed. When the police arrested Rodgers, they found a spray can of mace in his front pocket. According to the police, Rodgers asked if Jackson had died, then stated, "if he didn't, I'll make sure he does next time." Rodgers denied making this statement.

¶7. Dr. Paul McGarry, the forensic pathologist who conducted Jackson's autopsy, testified Jackson did not have any defensive wounds. Dr. McGarry testified the blood spatter in Jackson's car indicated, in his opinion, that Jackson was either sitting in the driver's seat or in the process of getting out of the car when he was shot. Dr. McGarry stated, based on the trajectory and angle of the bullet's path through the victim's chest cavity and the blood spatter inside the victim's vehicle, his opinion was the single shot fired was an "aimed shot" at the "center mass." Dr. McGarry performed a toxicology test on Jackson, which indicated a high level of methamphetamine in his system.

DISCUSSION

## I. "AT PERIL" SELF-DEFENSE JURY INSTRUCTION

¶8.     This case involves the inclusion of "at peril" language in one of six jury instructions on self-defense.  Rodgers argues that, even though he did not object to it, giving the following instruction entitles him to a reversal of his conviction.  Instruction S-10 provided:

> The Court instructs the Jury that a person may not use more force than reasonably appears necessary to save his life or protect himself from great bodily harm.  Where a person repels an assault with a deadly weapon, **he acts at his own peril** and the question of whether he was justified in using the weapon is for determination by the jury.

> The law tolerates no justification and accepts no excuse for an assault with a deadly weapon on the plea of self[-]defense except that the assault by the Defendant on the victim was necessary or apparently so to protect the Defendant's own life, or the life of another human being, or his person, or another human being, from great bodily injury and there was imminent danger of such design being accomplished.  The danger to life or of great personal injury must be or reasonably appear to be imminent, present at the time the Defendant commits the assault with a deadly weapon. The term "apparent" as used in "apparent danger" means such overt, actual demonstration by conduct and acts of a design to take life or do some great personal injury as would make the killing apparently necessary to self-preservation.

(Emphasis added).

¶9.     Citing *Flowers v. State*, 473 So. 2d 164 (Miss. 1985), Rodgers argues that the giving of this instruction constitutes plain error, entitling him to a reversal of his conviction.  In *Flowers*, the defendant specifically objected  at trial to the following instruction:

> The court instructs the jury that to make a homicide justifiable on the ground of self-defense, the danger to the slayer must be either actual, present and urgent, or the slayer must have reasonable grounds to apprehend a design on the part of the deceased to kill him, or to do him great bodily harm, and in addition to this that there was imminent danger of such design being accomplished, and **hence mere fear, apprehension or belief, however sincerely entertained by the slayer, that another designs to take his life or**

**to do him great bodily harm will not justify the slayer in taking the life of the latter party. The slayer may have a lively apprehension that his life is in danger or that he is in danger of great bodily harm, and believe the grounds of his apprehension just and reasonable, and yet he acts at his own peril.** He is not the final judge; the jury may determine the reasonableness of the grounds on which he acted.

*Id.* at 164-65 (emphasis in original). This was the only self-defense instruction given. Referring to an earlier decision criticizing the instruction, the court explained that the instruction was invalid because

the instruction is self-contradictory and confusing. The troublesome part is the first sentence of the final paragraph. If a party has "an apprehension that his life is in danger" and believes "the grounds of his apprehension just and reasonable[,]" a homicide committed by that party is in self-defense. These are the grounds upon which a claim of self-defense must be predicated. A party acting upon this principle does not "act at his peril."

*Id.* at 165 (quoting *Scott v. State*, 446 So. 2d 580, 583-84 (Miss. 1984)).

¶10.    *Flowers* specifically overruled eighteen prior decisions from 1859 to 1983, holding the instruction to be a correct pronouncement on the principles of self-defense. Chief Justice Roy Noble Lee with Presiding Justice Harry Walker dissented, arguing for the validity of the instruction. The apparent confusion and ambiguity stem from the phrase "he acts at his own peril." To what does "peril" really refer? Objectively speaking, if the defendant's use of deadly force was reasonable under the circumstances because he or another was placed in danger of serious bodily harm or death, the peril is nonexistent since he acted in necessary self-defense. If the "peril" referred to is that a twelve-person jury will ultimately determine the reasonableness of the defendant's use of deadly force under the attendant circumstances, then the "peril" is real. Hence, the confusion exists. The *Flowers* court overruled earlier cases that had approved the instruction, noting:

5

It appears from our review that criticism by this Court is construed to mean this instruction is approved for continued use. We intend precisely the opposite effect, that its use be discontinued. Presently to remove any such doubt, we now condemn [the quoted instruction] and forthrightly hold it constitutes reversible error in this case and will be so considered in future cases.

*Id.* The *Flowers* court did not mention whether it was applying a harmless-error or plain-error standard of review. The above language sounds like a per se rule of reversal, but the following language in the opinion is consistent with the harmless-error analysis that would be appropriate in the light of the defense objection that was made to the instruction in that case:

> In this case, with evidence conflicting in every possible degree as to the material facts, we think it likely that [the quoted instruction] unfairly diluted Flowers'[s] evidence that he fired in self-defense. In our opinion the instruction had the likely effect of denying the appellant his legal right to a proper self-defense instruction based upon the evidence.

*Id.* at 166.

¶11. *Flowers* has been cited twice since by our appellate courts in discussing self-defense instructions with the "at peril" descriptor. In *Johnson v. State*, 908 So. 2d 758 (Miss. 2005), the court held that a "pre-arming" instruction denying the defendant the right to claim self-defense and an "at peril" instruction were both invalid, requiring reversal of a conviction. The "at peril" instruction read:

> A person may not use more force than reasonably necessary to save his life, or the life of another, or protect himself or another from great bodily harm. When a person repels an assault with a deadly weapon, **he acts at his own peril**, and the question of whether he was justified in using the weapon is to be determined by you, unless there is no reasonable inference in the evidence except that the use of deadly weapon appeared necessary to protect himself or another from death or great bodily harm at the hands of his assailant.

6

*Id.* at 764 (¶20) (emphasis in original). In *Johnson*, three self-defense instructions and one defense-of-others instruction were given, but their contents are not recited. The opinion does not indicate whether there was a defense objection to any of the instructions. The court continued: "This court has condemned instructions that are contradictory and confusing." *Id.* at 764 (¶21) (quoting *Scott*, 446 So. 2d at 583). Continuing to quote *Scott*, the *Johnson* court noted:

> "A party acting upon this principle does not '**act at his peril**.' Of course, it is for the jury to determine the reasonableness of the ground upon which the defendant acts but if the defendant's apprehension is reasonable, **there is no peril**." [*Scott,* 446 So. 2d] at 583-84[.] "When a jury is given instructions which are **in hopeless conflict this Court is compelled to reverse** because it cannot be said that the jury verdict was founded on correct principles of law." *Id.* at 583. Such contradictory instructions constitute reversible error and have been condemned by this Court. *Flowers v. State,* 473 So. 2d 164, 165 (Miss. 1985).
>
> We conclude that jury instruction S-4 is contradictory and confusing and does not correctly state the applicable law because one acting in self-defense does not act at his own peril. This instruction constitutes reversible error. Therefore, this Court must reverse and remand for a new trial.

*Johnson,* 908 So. 2d at 764 (¶¶21-22) (emphasis in original and citations omitted).

¶12. In *Blunt v. State*, 55 So. 3d 207 (Miss. Ct. App. 2011), this Court held, on appeal of the denial of a post-conviction-relief motion, that defense counsel was constitutionally ineffective for submitting the following instruction, which appears to be the only instruction given on self-defense:

> The court instructs the jury that the defendant, Edward Lamon Blunt[,] is claiming that the killing of Michael Taylor was done in self-defense and thus under the law was a justifiable homicide. To make a killing justifiable on the grounds of self-defense, the danger to the defendant must not have been created, initiated or caused by him; the danger must be either actual, present, and urgent or the defendant must have reasonable grounds to apprehend a

7

design on the part of the victim to kill, or do some great bodily harm to him, and in addition to this, that there was apparent imminent danger of such design being accomplished. **Hence, the mere fear, apprehension or belief, however sincerely entertained by one person that another designs to take his life or to do him some great bodily harm, will not justify the accused taking the life of the deceased. A party may have an apprehension that his life is in danger and believe the grounds of his apprehension just and reasonable, and yet he acts at his peril. He is not the final judge; the [j]ury may determine the reasonableness of the grounds upon which he acted**.

*Id.* at 210-11 (¶13) (emphasis in original). Citing *Flowers* and *Johnson*, this Court held that defense counsel's performance was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984). *Blunt*, 55 So. 3d at 211 (¶15). Rather than applying a per se rule of reversal, this Court next conducted a plain-error analysis.

Since the instruction constituted an improper statement of law that was not corrected by other instructions, this Court may review the effect of the improper instruction of the jury under the plain-error doctrine. In order to prevail under the plain-error doctrine, an appellant must show that there was an error in the trial court and that the error resulted in a "manifest miscarriage of justice." *Flora v. State,* 925 So. 2d 797, 811 (¶42) (Miss. 2006) (quoting *Williams v. State,* 794 So. 2d 181, 187 (¶23) (Miss. 2001) (overruled on other grounds)). Furthermore, this Court may only apply the plain-error doctrine when the error complained of affects a defendant's fundamental or substantial rights. *Id.* (citing *Grubb v. State,* 584 So. 2d 786, 789 (Miss. 1991)). [Defense counsel's] proffered jury instruction no doubt prejudiced Blunt, whose due-process rights include the right to a properly instructed jury. *See Shaffer v. State,* 740 So. 2d 273, 282 (¶31) (Miss. 1998) (holding that the trial court's failure to instruct the jury properly on the elements of the crime charged implicated Justin Shaffer's due-process rights) . . . .

*Blunt*, 55 So. 3d at 211-12 (¶¶16-17) (citation omitted).

¶13.    *Harrell v. State*, 134 So. 3d 266 (Miss. 2014), does not require anything other than a plain-error standard of review in this case. In *Harrell*, the Mississippi Supreme Court held

8

that the failure to instruct the jury on an element of an offense[1] required reversal of the conviction, even in the absence of a defense objection. *Id.* at 275 (¶30). *Harrell* dealt with the failure to instruct on an element of an offense, not with a partially incorrect or confusing instruction. There is a difference between jury instructions that omit an element of the offense and jury instructions that contain an incorrect statement of the law, along with a correct statement of the law, and thus, have the potential to cause confusion.

¶14. There is no per se rule requiring automatic reversal whenever jury instructions contain conflicting or potentially confusing explanations of the law. In such cases, we apply traditional harmless-error or plain-error analysis, depending upon whether the defendant objected to the instruction at trial. In this case, as in *Blunt*, because there was no objection, traditional plain-error analysis applies.

¶15. Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice. *See Flora*, 925 So. 2d at 811 (¶42). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Conners v. State*, 92 So. 3d 676, 682 (¶15) (Miss. 2012) (citation and internal punctuation omitted).

¶16. "In reviewing challenges to jury instructions, the instructions actually given must be read as a whole. . . . When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Johnson*, 908 So. 2d at 764 (¶20) (quoting *Williams v. State*, 863 So. 2d 63, 65 (Miss. Ct. App. 2004)).

---

[1] In that case, robbery was the predicate offense for capital murder.

¶17. In this case, there were six jury instructions covering self-defense. Clearly there was an error in allowing the "at peril" phrase to infect one of the self-defense instructions. The issue thus narrows to this: reading the instructions as a whole, where self-defense is correctly defined in other instructions, does the presence of the "at peril" phrase in one instruction create the manifest risk that the jury convicted applying an incorrect legal standard? Based on the following examination of the instructions given and the record in this case, we think not.

¶18. Instruction S-4A was given and it provided:

> The Court instructs the jury that to make a killing justifiable on the grounds of self-defense, the danger to the defendant, or another human being, must be either actual, present and urgent, or the defendant must have reasonable grounds to believe that the victim intended to kill the defendant, or another human being, or to do him, or another human being, some great bodily harm, and in addition to this, he must have reasonable grounds to believe that there is imminent danger of such act being accomplished. It is for the jury to determine the reasonableness of the grounds upon which the defendant acts.

¶19. This instruction advises the jury that if the defendant has a reasonable ground to believe that the victim intends to kill or cause great bodily harm to the defendant or another, and a reasonable ground to believe the threat is imminent, then the killing is justified on the ground of self-defense.

¶20. Instruction D-3B was given and it provided:

> The Court instructs the jury that if you find the shooting of Clinton Wade Jackson was committed by James John Rodgers in the lawful defense of his person, or of another person, where there was reasonable ground to apprehend a design to do some great personal injury or to commit a felony upon [his person, or of another person], and there was imminent danger of such design being accomplished, then such shooting was justifiable.
>
> Further, a person, in such circumstances, who is not the initial aggressor

10

and is not engaged in unlawful activity shall have no duty to retreat before using deadly force, if the person is in a place where the person has a right to be and you shall not be permitted to consider James John Rodgers'[s] failure to retreat as evidence that his use of force was unnecessary, excessive or unreasonable.

¶21. This instruction advises the jury that if the defendant had a reasonable ground to apprehend an imminent threat of great personal injury or a felony upon himself or another, then the killing was justified. It also instructs on the "no duty to retreat" principle.

¶22. Instruction D-4 was given and it provided:

The Court instructs the jury that there is a presumption that James John Rodgers reasonably feared imminent death or great bodily harm, or the commission of a felony upon him or another or upon his dwelling if Clinton Wade Jackson was in the process of unlawfully and forcibly entering the dwelling of James John Rodgers or the immediate premises thereof and James John Rodgers knew or had reason to believe that the forcible entry or unlawful and forcible act was occurring or had occurred.

¶23. This instruction, sometimes referred to as "the castle doctrine," advised the jury that the defendant is entitled to a presumption that he reasonably feared imminent death or great bodily harm, or the commission of a felony upon himself, upon another, or upon his dwelling, if the victim had entered or was in the process of unlawfully and forcibly entering the defendant's dwelling or premises.

¶24. Instruction D-6A was given and it provided:

The Court instructs the jury that when considering the actions of James John Rodgers, you are not to hold him to the cool, calm light of after-developed facts, but instead you are to judge his actions in the light of the circumstances confronting James John Rodgers at the time, as you believe from the evidence that those circumstances appeared to him on that occasion; and if you believe that under those circumstances it reasonably appeared to James John Rodgers, at the instant that he shot Clinton Wade Jackson, that James John Rodgers then and there had reasonable ground to apprehend a design on the part of Clinton Wade Jackson to kill James John Rodgers or his

11

son, Jessie Rodgers, or to do James John Rodgers or Jessie Rodgers some great personal injury, and there reasonably appeared to James John Rodgers to be imminent danger of such designs being accomplished; then James John Rodgers was justified in anticipating an attack and using reasonable means to defend such attack; then you must find James John Rodgers not guilty of the murder of Clinton Wade Jackson.

¶25. This instruction again advised the jury that if the defendant had a reasonable belief in the imminent threat that the victim intended to kill or seriously harm the defendant or his son, then the killing was justified and the defendant was not guilty of murder. Further, in assessing the defendant's belief, the jury must judge him based on the circumstances as they reasonably appeared to the defendant at the time, and not in the calm light of subsequent knowledge.

¶26. Instruction D-18A was given and provided:

The Court instructs the jury that if you believe from the evidence that the deceased, Clinton Wade Jackson, was a much larger and stronger person than James John Rodgers, and was capable of inflicting great and serious bodily harm upon James John Rodgers or his son[,] Jessie Rodgers[,] and that James John Rodgers had reason to believe and did believe as a man of ordinary reason that he or his son were then and there in danger of such harm at the hands of Clinton Wade Jackson and used a pistol with which he fatally shot Clinton Wade Jackson, to protect himself or his son, from such harm, then James John Rodgers was justified, and your verdict shall be "not guilty" even though Clinton Wade Jackson may not have been armed.

¶27. This instruction advises the jury that they could factor the victim's large size and strength in determining whether the defendant's fear of harm was reasonable, and that if it was, the defendant was "not guilty," even though the victim was unarmed.

¶28. The phrase "he acts at his own peril" in challenged instruction S-10 is immediately followed in the same sentence with "and the question of whether he was justified in using the weapon is for determination by the jury." In this case, the jury heard evidence that Rodgers

12

challenged the victim to come talk to him face to face. Rodgers could have refrained from going to the back of the house and obtaining a deadly weapon. Rodgers could have heeded the urging of his girlfriend and remained in the safety of his home rather than to go outside and confront the victim after he had armed himself with a pistol. He could have used his phone, or his girlfriend's phone, to call the police. He could have used the mace he had in his pocket to subdue or drive away the victim rather than using his gun. The jury had ample evidence to conclude Rodgers himself was not under imminent deadly attack. Concerning Rodgers's defense of his son, although there was evidence of a scuffle between the victim and the son, neither exhibited significant wounds other than those caused when the victim fell to the ground (and the bullet in the victim's chest). No one testified that they saw the victim attacking anyone with a weapon. Moreover, neither in opening statement nor closing argument did the prosecutor argue the "he acts at his own peril" language in the jury instruction. The jury during deliberations sent no note to the judge requesting an explanation of the "he acts at his own peril" language. All witnesses present at the time of the shooting, including Rodgers, testified before the jury. The case was a well-tried case by competent counsel for both parties, and the jury was fully informed of Rodgers's claim of necessary self-defense.

¶29. The jury was instructed no less than six times that they must acquit if Rodgers had a reasonable fear of death or serious harm to himself or another. There is no reason to believe that the one reference to Rodgers acting at his peril swept these instructions from the jury's mind.

¶30. *Flowers*, *Johnson*, and *Blunt* make it clear that the "at peril" phrase is incorrect. That

13

does not end the inquiry, however. No supreme court decision holds that use of the "he acts at his own peril" language in a self-defense jury instruction is "per se" reversible error. For over 120 years in the jurisprudential history of this state, the "acts at his own peril" language in a self-defense jury instruction was considered totally appropriate. When considering the numerous and detailed instructions on self-defense given the jury, the jurors could not have been in hopeless conflict over the instructions. Moreover, we will not reverse a trial court on a matter never presented to it, and, certainly, we detect no manifest injustice that seriously affects the fairness, integrity, or public reputation of the judicial proceeding. In this case, and on these facts, there simply was no plain error. There is no merit to this assignment of error.[2]

## II.    SUFFICIENCY OF THE EVIDENCE

¶31.    Next, according to Rodgers, there was insufficient evidence to convict him of murder. "[When] considering whether the evidence is sufficient to sustain a conviction[,] . . . the critical inquiry is whether the evidence shows beyond a reasonable doubt that [the] accused committed the act charged, and did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citations and internal quotation marks omitted). The evidence is viewed in favor of the prosecution. *Id.*

¶32.    Rodgers was convicted of deliberate-design murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014), which provides: "The killing of a human being

_____

[2] We do not condone what we can only assume was the careless submission of the challenged jury instruction. The prosecution certainly acted at its peril in submitting an instruction containing language as strongly condemned as the "at peril" language in the challenged instruction. That it did not rise to the level of plain error in this case does not mean that it will not in a future case.

without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]" We recently discussed the elements of this statute in *Anderson v. State*, 2014 WL 1464465 (Miss. Ct. App. Apr. 15, 2014):

> "(1) the defendant killed the victim; (2) without authority of law; and (3) with deliberate design to effect his death." *Brown v. State,* 965 So. 2d 1023, 1030 (¶27) (Miss. 2007) (citation omitted). "Deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Id.* at (¶28) (citation omitted). "[A]n inference of intent to kill is raised through the intentional use of any instrument which, based on its manner of use, is calculated to produce death or serious bodily injury." *Jones v. State,* 710 So. 2d 870, 878 (¶35) (Miss. 1998) (citation omitted). In addition, Mississippi courts recognize that "shooting a victim with a gun constitute[s] deliberate-design murder." *Brown,* 965 So. 2d at 1030 (¶28) (citation omitted).

*Anderson*, 2014 WL 1464465, at *6 (¶21).

¶33. The State introduced sufficient evidence supporting each element of the offense. Rodgers argues that the killing was justified under the "castle" doctrine, which allows a person to use deadly force to repel an entry into his dwelling or its premises. The jury was properly instructed on the castle doctrine and rejected this defense. We cannot say, as a matter of law, that the killing was justified under this doctrine. There was evidence that the victim had not entered Rodgers's home and was not in the process of doing so when Rodgers shot him. This issue is without merit.

   III. WEIGHT OF THE EVIDENCE

¶34. Rodgers finally asserts that the overwhelming weight of the evidence was against his conviction. "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the

15

overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush,* 895 So. 2d at 844 (¶18) (citation omitted). We review the evidence in the light most favorable to the verdict, and we will not overturn the verdict unless we find that the circuit court abused its discretion in denying the motion for a new trial. *Woodard v. State*, 765 So. 2d 573, 576 (¶16) (Miss. Ct. App. 2000) (citing *Veal v. State,* 585 So. 2d 693, 695 (Miss. 1991)).

¶35.    Based upon our review of the evidence above, we cannot say that the weight of the evidence overwhelmingly supports setting aside the jury's verdict. This issue is without merit.

¶36.    **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.  LEE, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J.**

**LEE, C.J., DISSENTING:**

¶37.    The majority is correct that using the "at peril" language is error.  However, I would find the inclusion of this language is plain error meriting reversal; thus, I respectfully dissent. In reversing for a similar instruction, the *Flowers* court stated: "Presently[,] to remove any such doubt, we now condemn [i]nstruction[s] [containing similar language] and forthrightly hold it constitutes reversible error in this case and will be so considered in future cases." *Flowers v. State*, 473 So. 2d 164, 165 (Miss. 1985).  The majority notes that the *Flowers* court did not mention whether it was applying a harmless-error or plain-error standard of

16

review.  Regardless of which review the court applied, its intent was clear – the "at peril" language constitutes reversible error.  The *Flowers* court did not say whether it found the language questionable under a harmless-error or plain-error review; it simply found the language improper.

¶38.    The majority contends that the other self-defense jury instructions given were sufficient to overcome any confusion resulting from the instruction containing the "at peril" language.  The majority does recognize that the jury in *Johnson* was given three self-defense instructions and one defense-of-others instruction.  Even though the jury received these self-defense instructions, the court in *Johnson* still concluded that the instruction containing the "at peril" language was "contradictory and confusing and d[id] not correctly state the applicable law because one acting in self-defense does not act at his own peril.  This instruction constitutes reversible error." *Johnson v. State*, 908 So. 2d 758, 764 (¶20) (Miss. 2005).  The *Johnson* court clearly determined that the "at peril" language was reversible error, regardless of any additional self-defense instructions given to the jury.

¶39.    The plain-error doctrine has been construed to include error that is plain and which "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (citation and internal punctuation omitted).  As this Court stated in *Blunt*, "[d]ue[-]process rights include the right to a properly instructed jury." *Blunt v. State*, 55 So. 3d 207, 211 (¶16) (Miss. Ct. App. 2011).  In this instance, I find that the inclusion of the "at peril" language – language which has been repeatedly condemned – violated Rodgers's due-process rights; thus, I would reverse and remand for a new trial.

**BARNES, J., JOINS THIS OPINION.**