# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-KA-00429-SCT

*RAHEEM JOHNSON a/k/a RAHEEM SHAMARD JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/09/2018 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | SCOTT WINSTON COLOM |
| | SCOTT E. ROGILLIO |
| | KRISTEN WOOD WILLIAMS |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| |     JUSTIN TAYLOR COOK |
| | RAHEEM JOHNSON (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/13/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**GRIFFIS, JUSTICE, FOR THE COURT:**

¶1. Raheem Johnson appeals his conviction of first-degree murder. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 15, 2015, James White was shot and killed in Brad Reed's house in Clay County, Mississippi.

¶3. On the day of the murder, Reed, Ledesmond Shotwell, and White "partied" and used "crack" at Reed's house. Whitney Patton, Steve Wordlaw, and Kemp Watkins, Johnson's father, joined Reed and the others later that same day.

¶4. Reed saw Johnson earlier that day and told him to stop by his house. According to Reed, Johnson went to his house a "couple times" on May 15, 2015. Johnson first went to Reed's house to sell drugs. Johnson later returned to get his father. Johnson entered the house and told his father to "come on." Reed, Shotwell, Wordlaw, and Patton were in Reed's bedroom and did not see Johnson, but Reed heard his voice.

¶5. Immediately after Johnson and his father left, Reed heard the gunshots. White then called out for Reed, but Reed was too afraid to leave his bedroom. Reed then ran to his mother's house next door to alert the authorities. Shotwell and Wordlaw corroborated Reed's testimony.

¶6. Detective Brad Petit with the Clay County Sheriff's Department investigated White's death. Johnson was interviewed on three separate occasions. Johnson told Detective Petit that John-Roderick Johnson (Roderick) "flagged" him down the day White was shot. Roderick asked Johnson where he could find White. Johnson admitted he drove Roderick to a driveway near Reed's home with the knowledge that Roderick intended to kill White. After Johnson left Roderick at the driveway, he went to Reed's house to get his father.

¶7. At the close of the State's case-in-chief, Johnson moved for a directed verdict challenging the sufficiency of the State's evidence. The motion was denied. The jury found Johnson guilty of first-degree murder, and the trial court sentenced him to a term of life in

the custody of the Mississippi Department of Corrections. Johnson filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial. The trial court denied the motion. Johnson timely appealed.

¶8. On appeal, Johnson asserts four claims of error: (1) the trial court erred by denying his motion challenging the sufficiency of the evidence, (2) the trial court erroneously instructed the jury, (3) his grand jury indictment was improper, and (4) his jury verdict form was erroneous.

## ANALYSIS

*I.  Whether the evidence was sufficient to support a verdict of first-degree murder.*

¶9. Johnson challenges the legal sufficiency of the evidence. On the issue of legal sufficiency, "the critical inquiry is whether the evidence shows 'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" *Bowser v. State*, 182 So. 3d 425, 429 (Miss. 2015) (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), *abrogated on other grounds by Little v. State*, 233 So. 3d 288, 292 (Miss. 2017)). When reviewing the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush*, 895 So. 2d at 843 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

¶10. On appeal, Johnson asserts two different arguments challenging the legal sufficiency

3

of the evidence. First, he argues the State's evidence was purely circumstantial and, as a result, the State faced a heightened burden with respect to the legal sufficiency of the evidence. Second, he argues that the State failed to prove beyond a reasonable doubt every element of first-degree murder.

### A. Circumstantial Evidence

¶11. Johnson contends that the State's case is "purely circumstantial." He argues that "[i]n this case, there is no direct evidence as to who killed White"; therefore, the State's case is "purely circumstantial." "A circumstantial evidence case is one where the State is 'without a confession and wholly without eyewitnesses to the gravaman of the offense charged.'" *Osby v. State*, 139 So. 3d 98, 100 (Miss. Ct. App. 2013) (internal quotation marks omitted) (citing *Garrett v. State*, 921 So. 2d 288, 291 (Miss. 2006)). Additionally, a defendant's confession is direct evidence. *Anderson v. State*, 152 So. 2d 702, 828 (Miss. 1963).

¶12. This is not a purely circumstantial-evidence case. Five days after the murder, Johnson confessed to Detective Petit and provided details of his involvement in White's death. At that time, Johnson implicated Roderick as the shooter of White.

¶13. Johnson's confession described the events before White's murder. On the day of the murder, Roderick "flagged" Johnson down and asked Johnson where he could find White. Johnson told Roderick that White was at Reed's house. Roderick advised Johnson that he needed to "handle a little business." When Johnson asked what Roderick was talking about, Roderick said "like s**t bro I got to off that n***a."

¶14. After their conversation, Johnson and Roderick went to Johnson's house. Johnson

then drove Roderick to a driveway near Reed's house. Roderick exited the vehicle with a gun cocked. Johnson asked Roderick to let him get his dad out of Reed's house. Johnson then went and got his father from Reed's house. The gunshots were fired after Johnson and his father left the house and returned to the vehicle.

¶15. After his confession, Johnson identified Roderick from a lineup as the individual who entered Reed's house and shot White.

¶16. Johnson's confession and identification are direct evidence sufficient to implicate Roderick as the individual who shot White. Accordingly, Johnson's argument is without merit.

### B. Elements

¶17. Johnson next argues that the State failed to prove beyond a reasonable doubt that he was an accessory before the fact to Roderick's murder of White. The grand jury of Clay County indicted Johnson for murder in violation of Mississippi Code Section 97-3-19 (Supp. 2018). The State tried Johnson as an accessory before the fact to Roderick's murder of White under Mississippi Code Section 97-1-3 (Rev. 2014).

¶18. This Court defined accessory before the fact as "one who procures, counsels or commands another to commit a felony for him, but is not himself present, actually or constructively, when the felony is committed." *Huff v. Edwards*, 241 So. 2d 654, 657 (Miss. 1970) (citing 1 Wharton, *Criminal Law and Procedure* § 110 (Anderson ed. 1957)). "The concept of an accessory before the fact involves some participation in the criminal act." *Clemons v. State*, 482 So. 2d 1102, 1105 (Miss. 1985) (citing *West v. State*, 233 Miss. 730,

5

103 So. 2d 437, 439 (1958)). This Court has affirmed numerous convictions "of persons as accessories where the evidence reflected some conduct on the part of the accused which facilitated the consummation of the principal crime." *Id.* (citing *McGowan v. State*, 375 So. 2d 987, 990 (Miss. 1979); *Pilcher v. State*, 296 So. 2d 682 (Miss. 1974); *Kennard v. State*, 242 Miss. 691, 128 So. 2d 572 (Miss. 1961)).

¶19. At trial, the State produced Johnson's confession to Detective Petit. Johnson told Detective Petit that Roderick intended to "off" White because Roderick thought White was a "rat." Roderick, Johnson, and two others went to Johnson's house. While at Johnson's house, the conversation about killing White continued. According to Johnson,

> Uh "Pud" (Roderick) was just saying that we, Pud was just well Pud was saying like uh man ya'll boys gonna drop me off man. Ya'll gonna do this. And I'm Raheem (Johnson) ain't doing it. Then he's like man know everything. Aint no way bro ya'll have to do this, ya'll got to do it. Just like that right there. And so I said man I said f**k it ya'll can man um, at first I went up there cause I seen my Daddy was in there. I was like s**t man let me get my Daddy.

¶20. Johnson and Roderick left Johnson's house together, and Johnson drove Roderick to a driveway near Reed's house. According to Johnson, Roderick exited the vehicle with a gun. Johnson explained,

> getting out the car [Roderick] still had the door open, he pulled it out and he cocked it and I and I pulled off then. And I pulled off and pulled in *inaudible* man let me *inaudible* in here and get my Dad out man. I pulled on up, went in there and told my Dad to come on and stuff. By the time out, I got back outside and got in the car he jumps outta the house and then by that time my Dad was coming out the house then my Dad got in the car. And when my Daddy got in the car, the dude Pud was already in the house. He fired off a shot then so it just constantly shooting. And then my Dad, I was backing I was put the car in reverse to back out but Dad was saying hold on-hold on let's see what's going on. But I was still backing out. I didn't never stop to see.

6

¶21. The State produced additional witnesses who testified that Johnson entered Reed's house and told his father to "come on." Johnson's father testified that Johnson told him that "they may kill you," and Johnson began to act queasy.

¶22. Further, the state offered Brad Lovejoy, an engineer for AT&T, who testified regarding Roderick's cell-phone records. Lovejoy testified that a cellular tower near Reed's house communicated with the cellular number associated with Roderick at approximately 10:38 p.m. on May 15, 2015.

¶23. Johnson knew Roderick intended to kill White. Johnson dropped off Roderick near Reed's house so that Roderick could locate and kill White. Because Johnson knew Roderick intended to shoot White, Johnson removed his father. Shortly after Johnson removed his father, Johnson heard gunshots. Collectively, sufficient evidence was presented for a rational jury to find beyond a reasonable doubt that Johnson acted in concert with Roderick to kill White. Therefore, we find that sufficient evidence was presented to support Johnson's conviction.

II. *Whether Johnson's indictment was sufficient.*

¶24. Johnson argues that his indictment failed to provide notice that the State intended to pursue a theory of accessory before the fact.

¶25. "The question of whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review by this [C]ourt." ***Peterson v. State***, 671 So. 2d 647, 652 (Miss. 1996), *superseded on other grounds by statute as discussed in* ***Caston v. State***, 949 So. 2d 852, 856 (Miss. Ct. App. 2007). "[T]his Court conducts de novo review

7

on questions of law." *Id.* (citing *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 754 (Miss. 1987)).

¶26. The State argues that Johnson failed to assert this argument at the trial court. This Court has held with respect to an indictment that "a variance not objected to at trial is waived." *Washington v. State*, 800 So. 2d 1140, 1145 (Miss. 2001) (citing *Ellis v. State*, 254 So. 2d 902, 903 (Miss. 1971)); *Kellum v. State*, 213 Miss. 579, 582, 57 So. 2d 316 (1952)). This Court agrees and finds this issue procedurally barred.

¶27. Despite this procedural bar, this Court still finds that the issue is without merit. Johnson agrees that Mississippi law recognizes that an accessory before the fact is deemed a principal for the purposes of punishment. Miss. Code Ann. § 97-1-3 (Rev. 2014). He asserts that it is impermissible for an indictment to state the principal offense rather than accessory before the fact. Johnson's indictment stated as follows:

> Raheem Johnson late of the County aforesaid, did on or about the 15th day of May, 2015, in the County and State aforesaid, unlawfully, willfully, and feloniously, with the deliberate design to effect death, did kill and murder a human being, James White, without authority of law and not in necessary self defense, in violation of MCA § 97-3-19; contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Mississippi.

¶28. Section 97-1-3 of the Mississippi Code states that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this is whether the principal have been previously convicted or not." Miss. Code Ann. § 97-1-3 (Rev. 2014). According to this statute, "an accessory to any felony before the fact is a principal and may be convicted as a principal in

an indictment charging him or her as principal." *State v. Peoples*, 481 So. 2d 1069, 1070 (Miss. 1986) (citing *Blackwell v. State*, 231 So. 2d 790, 792 (1970), *cert. denied*, *Blackwell v. Mississippi*, 400 U.S. 848, 91 S. Ct. 43, 27 L. Ed. 2d 86 (1970); *Hathorn v. State*, 246 Miss. 135, 138, 149 So. 2d 845 (1963); *West v. State*, 233 Miss. 730, 732, 103 So. 2d 437 (1958); *Goss v. State*, 205 Miss. 177, 186, 38 So. 2d 700 (1949)).

¶29. Johnson's indictment correctly cited Mississippi Code Section 97-3-19 (Supp. 2019), which proscribes murder. It is permissible for Johnson's indictment to charge the principal offense and for the State to proceed throughout trial as though Johnson was an accessory before the fact. *Peoples*, 481 So. 2d at 1070. Additionally, Johnson's indictment was not fatally defective because it provided the essential elements of first-degree murder and stated facts sufficient to provide notice of the crime charged. This Court finds Johnson was properly notified of the crime charged, and he was correctly indicted under Mississippi law. Accordingly, the trial court did not err.

> III.   *Whether the trial court erred by giving jury instructions S-2, S-5, and S-6.*

¶30. Johnson argues that jury instructions S-2, S-5, and S-6 were erroneously given by the trial court.

¶31. This Court reviews a trial court's "grant or denial of proposed jury instructions for an abuse of discretion . . . ." *Brown v. State*, 222 So. 3d 302, 306 (Miss. 2017) (citing *Quinn v. State*, 191 So. 3d 1227, 1231-32 (Miss. 2016)). "The instructions are to be read together as a whole, with no one instruction to be read alone or taken out of context." *Reith v. State*, 135 So. 3d 862, 865 (Miss. 2014) (internal quotation marks omitted) (quoting *Bailey v. State*,

9

78 So. 3d 308, 315 (Miss. 2012)). "[I]f the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id.* (internal quotation mark omitted) (quoting *Bailey*, 78 So. 3d at 315). "Failure to instruct the jury on the essential elements of the crime is plain error." *Wordlaw v. State*, 218 So. 3d 768, 769 (Miss. Ct. App. 2017) (internal quotation marks omitted) (citing *Rogers v. State*, 95 So. 3d 623, 632 (Miss. 2012)). "Questions of law, however, are reviewed de novo." *Burris v. State*, 18 So. 3d 321, 322 (Miss. Ct. App. 2009) (citing *Ruff v. State*, 910 So. 2d 1160, 1161 (Miss. Ct. App. 2005)).

### A. Instruction S-2

¶32. Without objection by Johnson, the jury was given Instruction S-2. That instruction reads as follows:

> The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable that:
>
> 1. The defendant, Raheem Johnson, acting as an *accessory before the fact* or as the *principal*,
>
> 2. in Clay County, Mississippi did on or about May 15, 2015,
>
> 3. unlawfully, willfully, and feloniously, with the deliberate design to effect death, *kill James White*, a human being, without authority of law and not in necessary self-defense,
>
> then you shall find the defendant guilty of Murder as charged.
>
> If the State has failed to prove any of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.

(Emphasis added.)

¶33. "Ordinarily, failure to object to a given instruction at trial results in a procedural bar

10

on appeal, unless its granting amounts to plain error." ***Berry v. State***, 728 So. 2d 568, 571 (Miss. 1999) (citing ***Sanders v. State***, 678 So. 2d 663, 670 (Miss. 1996)). "There is no per se rule requiring automatic reversal whenever jury instructions contain conflicting or potentially confusing explanations of the law. In such cases, we apply traditional harmless-error or plain-error analysis, depending upon whether the defendant objected to the instruction at trial." ***Rodgers v. State***, 166 So. 3d 537, 544 (Miss. Ct. App. 2014). Since Johnson failed to object to this instruction at trial, we apply the plain-error analysis.

¶34. "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice." ***Id.*** "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." ***Id.*** (internal quotation marks omitted) (citing ***Conners v. State***, 92 So. 3d 676, 682 (Miss. 2012)).

¶35. "For a jury to convict as an accessory before the fact there must be evidence that the defendant 'procures, counsels, or commands another to commit a felony for him, but is not himself present, actually or constructively, when the felony is committed.'" ***Wilson v. State***, 592 So. 2d 993, 997 (Miss. 1991) (quoting ***Sayles v. State***, 552 So. 2d 1383, 1389 (Miss. 1989), *superseded on other grounds by rule as discussed in* ***Lacy v. State***, 629 So. 2d 591 (Miss. 1993). "The jury is not permitted to simply assume that the felony was in fact committed." ***Id.*** "The jury must find beyond a reasonable doubt that the crime was committed and that the defendant counseled or commanded another to commit the crime."

*Id.* (citing ***Ray v. State***, 330 So. 2d 580, 587 (Miss. 1976)).

¶36.     As stated above, a jury must find that a crime had in fact been committed. ***Id.*** Paragraph three of this instruction states that Johnson "unlawfully, willfully, and feloniously, with the deliberate design to effect death, *kill[ed] James White*, a human being, without authority of law and not in necessary self-defense . . . ." (Emphasis added.) We find that this instruction sufficiently informed the jury that, before convicting, it had to find that a murder had in fact been committed.

¶37.     The instruction would have been clearer if, after the language "acting as an accessory before the fact," there had been inserted a phrase that indicated that Roderick had killed White. Additionally, the instruction included the term "principal," and that term should not have been included in the instruction because both the prosecution and the defense repeatedly stated during trial that Johnson was not to be considered as the principal but rather an accessory before the fact to Roderick's killing of White. In support of this contention, the prosecution offered evidence and testimony that Roderick was the individual who killed White. While this may be considered an error, we must also consider whether this error "resulted in a manifest miscarriage of justice." ***Rodgers***, 166 So. 3d at 544.

¶38.     Instruction S-2 included the terms "accessory before the fact" and "principal." While the evidence and testimony presented at trial provides that Johnson was an accessory before the fact, Instruction S-2 required the jury to find that Johnson killed White. But we do not find that this amounts to a manifest miscarriage of justice because our law says that an accessory before the fact is deemed a principal.

¶39.   "That instructions may be made more perfect does not mean they are legally inadequate."  *Turner v. State*, 573 So. 2d 1340, 1343 (Miss. 1990).  We have carefully reviewed Instruction S-2 and the other instructions given by the trial court and presume that the jury did too.  Before it could find Johnson guilty as an accessory before the fact, the jury also had to find the fact.  Thus, we find that this instruction does not amount to plain error.

### B.   Instruction S-5

¶40.   Johnson contends that the trial court failed to properly instruct the jury on the essential elements of accessory before the fact.

¶41.   At trial, Johnson did not object to Instruction S-5.  "This Court has held on numerous occasions that an offended party's failure to object to jury instructions at trial procedurally bars the issue on appeal."  *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009) (internal quotation marks omitted) (citing *Smith v. State*, 835 So. 2d 927, 939 (Miss. 2002)).  Because Johnson did not contemporaneously object to jury Instruction S-5, this Court finds that the issue is procedurally barred.

¶42.   Despite this procedural bar, Johnson focuses on the distinction between an accessory before the fact and an aider and abettor, arguing that Instruction S-5 was incomplete.  This Court has held that "[a]ny person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender."  *Sayles*, 552 So. 2d at 1389 (citing *Bullock v. State*, 391 So. 2d 601, 614 (Miss. 1980)).  "An accessory before the fact is one who procures, counsels or commands another to commit a felony for him . . . ."  *Huff*, 241

13

So. 2d at 657 (citing 1 Wharton, *Criminal Law and Procedure* § 110 (Anderson ed. 1957)).

"The primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party." **Sayles**, 552 So. 2d at 1389. "If a person was actually or constructively present at the offense, due to his participation he is an aider and abettor." **Id.** (citing **Walters v. State**, 218 Miss. 166, 65 So. 2d 465 (1953)). "If he was not present, he is an accessory-before-the-fact." **Id.** (citing **Clemons v. State**, 482 So. 2d 1102, 1106 (Miss. 1985)).

¶43.   After Johnson's trial, the trial court instructed the jury on the crime of accessory before the fact as provided in relevant part:

> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
>
> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either *directed or aided and abetted* the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

(Emphasis added.)

¶44. Even though Instruction S-5 used the term "aided and abetted," this instruction accurately defined accessory before the fact and described the essential requirements to be found guilty as an accessory before the fact.  Moreover, since this Court reads jury instructions "together as a whole," and in light of the other instructions given by the trial judge, this instruction and the others inform the jury of the requisite elements of accessory

14

before the fact. ***Reith***, 135 So. 3d at 865. Therefore, this Court finds that the trial judge did not abuse his discretion by giving this instruction.

### C. Instruction S-6

¶45. Next, Johnson argues Instruction S-6 confused the jury and was not supported by the evidence. Instruction S-6 states that "[t]he Court instructs the Jury that duress is not a legal defense to Murder."

¶46. The State argues that Johnson failed to properly object to Instruction S-6 during the jury-instruction conference. When asked about the instruction, defense counsel stated, "Your Honor, I don't [sic] there's any direct evidence that we claim duress as a defense at this point. So, I'm afraid it might confuse the jury." Once defense counsel expressed her concern with the instruction, the trial judge stated, "I'm going to allow it. There is a sliver of evidentiary support." This Court finds that this is sufficient to preserve the issue for appeal.

¶47. Johnson asserts two issues with respect to Instruction S-6. First, Johnson argues that Instruction S-6 is an incorrect statement of the law. But "[l]ongstanding Mississippi law holds that duress is not a legal defense to murder." ***Fuqua v. State***, 938 So. 2d 277, 283 (Miss. Ct. App. 2006) (citing ***Watson v. State***, 212 Miss. 788, 55 So. 2d 441, 443 (Miss. 1951)).[1] This Court's precedent is clear, and, according to that precedent, Instruction S-6

---

[1] We note that duress is a valid defense to the underlying felony in a capital-murder case. ***Banyard v. State***, 47 So. 3d 676, 682-83 (Miss. 2010). In ***Banyard***, Banyard was charged with capital murder while engaged in a robbery. ***Id.*** at 682. Banyard's "theory throughout the entire case was that he had committed the robbery under duress." ***Id.*** at 683. On appeal, this Court found that the evidence supported a duress instruction because "if the jury found that Banyard was indeed acting under duress, he could not be found guilty of the robbery of Ballard, one of the essential elements of the capital-murder charge." ***Id.***

is not an incorrect statement of the law. Therefore, this Court finds that this argument is without merit.

¶48. Second, Johnson argues that the record does not support Instruction S-6 because he never asserted duress as a defense. Johnson's confession to Detective Petit contained three separate instances in which Johnson told Roderick to "let [him] get [his] Daddy" before Roderick entered Reed's house to shoot White.

¶49. At the jury-instruction conference, the State expressed concern that the jury may find that "[Johnson] really didn't participate in the murder . . . [h]e was more concerned about his dad." Further, the State provided that "[w]ell, [Johnson] doesn't have a right to take a murderer to kill somebody if it's under the due duress of wait a minute. You may hurt my dad." After the State provided its reasoning for the instruction, the trial judge gave the instruction based on "a sliver of evidentiary support."

¶50. Johnson did not affirmatively assert the defense of duress at trial, but the evidentiary record supports the instruction. In light of this Court's standard of review, the trial judge did not abuse his discretion by giving Instruction S-6.

    *IV.    Whether the jury verdict form and result were erroneous.*

¶51. Johnson argues that the jury verdict form and result were erroneous. This Court reviews questions of law de novo. **Burris**, 18 So. 3d at 322.

¶52. At trial, the jury was given three verdict forms: guilty as principal; guilty as an accessory before the fact; or not guilty. Johnson argues that the State pursued Johnson as an accessory before the fact to Roderick's murder of White, but Johnson then asserts that

16

Instruction S-5 characterized him as an aider and abettor. In support of this argument, Johnson relies on the distinction between an accessory before the fact and an aider and abettor.

¶53. As previously noted, this Court held that "[t]he primary distinction between the accessory-before-the-fact and an aider and abettor is the actual or constructive presence of the party." *Sayles*, 552 So. 2d at 1389. "If a person was actually or constructively present at the offense, due to his participation he is an aider and abettor." *Id.* (citing *Walters*, 65 So. 2d at 468). "If he was not present, he is an accessory-before-the-fact." *Id.* (citing *Clemons*, 482 So. 2d at 1106).

¶54. This Court, in *Dilworth v. State*, noted the distinction between an accessory before the fact and an aider and abettor. *Dilworth v. State*, 909 So. 2d 731, 734 (Miss. 2005) (citing *Hooker v. State*, 716 So. 2d 1104, 1110 (Miss. 1998)). Specifically, this Court stated that "[a]iding and abetting and acting as an accessory-before-the-fact are two wholly distinct crimes." *Id.*

¶55. Johnson argues that he could not be found guilty as an accessory before the fact because he was present at the time Roderick shot and killed White. It is undisputed that Johnson was not present at the time Roderick shot and killed White. Evidence presented at trial showed that at the time of the shooting, Johnson was no longer in Reed's house but that Johnson was at his vehicle located in Reed's driveway. Therefore, this issue is without merit.

## CONCLUSION

¶56. We find sufficient evidence was presented to support Johnson's murder conviction.

17

The indictment sufficiently notified Johnson of the charged crime, and the jury was properly instructed. Accordingly, Johnson's conviction and sentence are affirmed.

¶57. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**