# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-01246-SCT

*JAKEVIYON D. HUNTER a/k/a JAKEVIYON DEMARQUISE HUNTER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/01/2023 |
| TRIAL JUDGE: | HON. DEWEY KEY ARTHUR |
| TRIAL COURT ATTORNEYS: | BRENT M. BRUMLEY |
| | SCOTT E. ROGILLIO |
| | RANDALL HARRIS |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT, JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/27/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     A jury convicted Jakeviyon Hunter of first-degree murder and of shooting into an occupied vehicle. The Madison County Circuit Court sentenced him to life imprisonment for first-degree murder and to five years for shooting into an occupied vehicle. The circuit court denied Hunter's post-trial motion. Hunter now asks this Court to grant him a new trial based on improperly admitted evidence. Finding no error, we affirm Hunter's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.    In November 2022, Sergeant James Alford with the Richland Police Department pulled over Jaquarius Ross because his truck windows and license plate cover were too darkly tinted.  Hunter was riding in the front passenger seat.  Sergeant Alford smelled burning marijuana from the truck and subsequently searched the truck.  He found marijuana and three guns.

¶3.    Neither Ross nor Hunter would claim the marijuana, so Sergeant Alford arrested them both and charged them with "possession of a controlled substance, enhanced with a weapon." Both men pled not guilty in municipal court on January 18, 2023.

¶4.    On January 21, 2023, Ross drove his truck to a grocery store in Flora, Mississippi, and then to a nearby house.  His friend Zantavius Fuqua was in the front passenger seat.  While Ross and Fuqua were in the truck, Fuqua saw Hunter, wearing a hoodie, walk out of the house toward Ross's truck and start shooting.  Hunter fired eight shots into the vehicle. Bullets struck Ross in multiple areas, including his face, head, neck, left arm, and torso. Fuqua exited the truck and fled.  Ross was pronounced dead at the scene.

¶5.    Hunter was charged with first-degree murder and shooting a firearm into an occupied vehicle.  Before trial, the State filed a Notice of Intent to Introduce Mississippi Rule of Evidence 404(b) Testimony and Evidence. The State informed the circuit court that it was "prepared to produce evidence that the defendant Hunter and the victim Ross had agreed that Ross would plead guilty at the municipal hearing and take responsibility for the suspected drugs in the car and the defendant would help him pay the fine after his, the defendant's,

charges were dropped." The State further maintained that "[t]he evidence will show that the defendant feared that his conviction would seriously and adversely affect his military career in the National Guard." The State argued that it was entitled to introduce the evidence to show Hunter's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *See* MRE 404(b)(2).

¶6. On the first day of trial, Hunter's privately retained counsel informed the court that Hunter had fired him earlier that morning. The court therefore conducted an on-the-record examination of Hunter and ultimately found that Hunter knowingly and voluntarily waived his constitutional right to counsel. Nevertheless, the circuit court ordered Hunter's counsel to remain present during proceedings in case Hunter wished to withdraw his waiver.

¶7. Ronderick King testified that he saw Ross and Fuqua at the grocery store shortly before the shooting. When King left, he passed Hunter's house and saw Ross's truck parked out front. King testified that he noticed that the passenger door was open, and he could see Ross lying motionless in the driver's seat. King called 911.

¶8. Fuqua testified that he did not know why he and Ross stopped at the house after the grocery store and that Ross was on a FaceTime call with someone when they pulled up to the house. They both were still sitting in the car when Fuqua saw Hunter, wearing a hoodie, walk out of the house toward Ross's truck and start shooting. Video footage obtained from a neighbor's security camera was shown to the jury and mirrored Fuqua's personal account. The video showed a person in a "tan, gold, or brown hoodie" walk down the driveway toward Ross's truck. Seconds later, the back glass of the truck exploded, and the person in

3

the hoodie ran back toward the house.

¶9.     Ross was on the phone with his girlfriend, Darrah McGruder, when he was shot. Darrah explained to the jury that she, Ross, Hunter, and Hunter's girlfriend had been on a FaceTime call together earlier in the day.  A screenshot taken during the four-way call showed Hunter wearing a brown hoodie.  Ross and Hunter argued during the call, and Ross ended the call.

¶10.     Staff Sergeant Jered Meeks with the Mississippi National Guard testified that he recruited Hunter into the service when Hunter was a senior in high school.  Sergeant Meeks told the jury that he was Hunter's mentor.  Four to five weeks before the murder, Hunter told Sergeant Meeks about the traffic stop and the resulting criminal charge.  Sergeant Meeks testified that he warned Hunter that the drug charge could be a "career ender" with the military.  Hunter reportedly told Sergeant Meeks that his codefendant "was supposed to go to court" and "take the charge," which would hopefully result in Hunter's being dismissed from the case.  Hunter made no objection during this testimony.

¶11.     Sergeant Alford with the Richland Police Department testified in detail about the traffic stop that occurred in November 2022.  Hunter made no objection during this testimony either.  Following Sergeant Alford's testimony, the circuit court ruled outside of the presence of the jury that the evidence of possession of marijuana was admissible under Mississippi Rule of Evidence 404(b) to show motive, intent, plan, and identity.

¶12.     After some back-and-forth between Hunter and the court, Hunter withdrew his waiver and informed the court that he was proceeding with his privately retained counsel.  The court

4

accepted Hunter's withdrawal, and proceedings continued.

¶13. Lieutenant Ryan Wigley with the Madison Police Department testified that he retrieved text messages from Hunter's phone. On January 18, 2023, the day Hunter and Ross went to court, Hunter texted Ross, "You gonna take the charge?" Ross did not respond, and Hunter wrote, "I can help you with that fine." Ross responded, "aight." But several hours later, Ross pled not guilty. On the day of the shooting, Hunter texted Ross, "Get back on the call." Then a few hours later, Hunter told Ross to "[b]ring them shoes." Ross said, "aight." Responding officers found a pair of Air Jordan shoes in the front seat console of Ross's truck after he was shot.

¶14. Hunter did not call any witnesses. The jury found Hunter guilty of first-degree murder and of shooting into an occupied vehicle. Hunter then filed a motion for a judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. The circuit court denied the motion. Hunter appeals.

¶15. Hunter raises thirteen issues on appeal, the first through the Office of State Public Defender and the remaining twelve through pro se supplemental briefing. With his first issue, Hunter alleges the admission of evidence of his misdemeanor charge was plain error. The remaining twelve issues are all ineffective-assistance-of-counsel claims.

## DISCUSSION

¶16. We note first that Hunter did not object to the admission into evidence of his previous charge of marijuana possession at trial. He is therefore procedurally barred from claiming the evidence's admission was improper. *Clanton v. State*, 365 So. 3d 203, 211 (Miss. 2023)

(citing *Missala Marine Servs., Inc. v. Odom*, 861 So. 2d 290, 296 (Miss. 2003)). On appeal, Hunter proceeds under the plain-error doctrine.

¶17. "Under the plain-error standard of review, we consider: (1) whether there was an error; (2) that adversely affected a defendant's substantive rights, causing a manifest miscarriage of justice." *Johnson v. State*, 290 So. 3d 1232, 1240 (Miss. 2020) (internal quotation marks omitted) (quoting *Rodgers v. State*, 166 So. 3d 537, 544 (Miss. Ct. App. 2014). "For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotation marks omitted) (quoting *Rodgers*, 166 So. 3d at 544). As explained in detail below, no such error occurred.

¶18. Under Mississippi Rule of Evidence 404(b)(1), evidence of prior crimes is inadmissible. Mississippi Rule of Evidence 404(b)(2) provides multiple exceptions to Rule 404(b)(1), however. Specifically, Rule 404(b)(2) provides that "evidence [of a crime, wrong, or other act] may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶19. Before admitting evidence of prior bad acts, a circuit court must filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant. *Derouen v. State*, 994 So. 2d 748, 756 (Miss. 2008). If a circuit court finds the probative value outweighs the prejudicial effect, the evidence will be admitted, provided the jury is given a limiting instruction regarding the

6

evidence in question. *Id.* Here, the court found that, under Rule 404(b), the evidence of possession of marijuana was admissible to show motive, intent, plan, and identity. The court additionally noted that the "evidence of misdemeanor possession of marijuana, which quite frankly is a $250 fine, is not so highly prejudicial that the . . . probative value as to motive and intent would outweigh any allegation of unfair prejudice . . . ." At the end of trial, the court provided the jury with the following limiting instruction:

> The court instructs the jury that acts testified about concerning marijuana possession and/ or consumption are acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. You cannot and must not simply infer that the defendant acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.

¶20. "This Court has held that 'proof of another crime or act' is allowed 'when it is so interrelated to the charged crime that it constitutes either a single transaction or occurrence or a closely related series of transactions or occurrences.'" *Anderson v. State*, 359 So. 3d 637, 644 (Miss. 2023) (quoting *Brown v. State*, 890 So. 2d 901, 912 (Miss. 2004)). "Evidence of other bad acts is admissible in order to tell a complete story to avoid confusion among jurors." *Simmons v. State*, 805 So. 2d 452, 481 (Miss. 2001) (citing *Ballenger v. State*, 667 So. 2d 1242, 1256 (Miss. 1995)). "[W]hen dealing with closely related acts, the State 'has a legitimate interest in telling a rational and coherent story of what happened[.]'" *Newell v. State*, 175 So. 3d 1260, 1276 (Miss. 2015) (alterations in original) (internal quotation marks omitted) (quoting *Welde v. State*, 3 So. 3d 113, 117 (Miss. 2009)). In this case, the evidence of Hunter's drug charge was a closely related act that allowed the State

7

to tell a complete story of the events that ultimately resulted in Ross's murder. The testimony illustrated the devolution of Hunter and Ross's friendship after the traffic stop. In addition, Sergeant Meeks testified that the drug charge could negatively impact Hunter's military career. Without this information, the jury would have lacked a necessary piece of evidence that showed Hunter's motive, intent, and plan.

¶21. We therefore find no error in the circuit court's admission of Hunter's drug charge into evidence, much less plain error.

¶22. We now turn to Hunter's various claims of ineffective assistance of counsel asserted in his pro se supplemental brief. Hunter argues twelve instances in which his attorney was ineffective before, during, and after trial. These arguments include, inter alia, trial counsel's failure to file a pretrial motion to suppress evidence, trial counsel's failure to object to certain evidence at trial, and trial counsel's failure to call any witnesses on Hunter's behalf.

¶23. "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (Miss. 2020) (alteration in original) (internal quotation marks omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (Miss. 2016)). Such claims will be addressed on direct appeal when "[(1)] the record affirmatively shows ineffectiveness of constitutional dimensions, or [(2)] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc.[,] are not needed." *Id.* (third alteration in original) (internal quotation marks omitted) (quoting *Bell*, 202 So. 3d at 1242). We also address ineffective-assistance claims on direct appeal when the "record affirmatively

8

shows that the claims are without merit." *Id.* Although we agree that some of Hunter's claims could be addressed on direct appeal, Hunter's claims were not properly brought before this Court because his brief was not timely filed. Specifically, Hunter's brief was filed almost three months after the deadline of the Office of Indigent Appeals and more than a month after the State filed its principal brief. Hunter never asked for additional time to file his brief. For these reasons, we strike Hunter's pro se supplemental brief as untimely. Hunter may still proceed, however, under the Mississippi Uniform Post-Conviction Collateral Relief Act. *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2020).

## CONCLUSION

¶24. After review, we find no plain error occurred when Hunter's misdemeanor charge was admitted into evidence. We accordingly affirm Hunter's conviction and sentence.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, CHAMBERLIN, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**